THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE R. SHELDON et al., Respondents, v. THE BOARD OF APPEALS OF THE CITY OF NEW YORK et al., Appellants, Impleaded with Others.

**New York city — zoning regulations — power of board of appeals to vary or alter zoning regulations so as to permit erection of business building upon plot of land part of which is within a residence district.**

1. By the enactment of chapter 470 of the Laws of 1914, adding sections 242-a and 242-b to the charter of the city of New York, and by the enactment of chapter 601 of the Laws of 1917, amending said sections and amending section 718-d of such charter, the first comprehensive scheme relating to the division of the city of New York into districts and the class and character of the buildings to be permitted to be erected in such districts was provided.

2. Sections 242-a and 242-b, as so amended, when read in connection with section 718-d, as amended, followed by action by the board of estimate and apportionment amending the zone resolution by conferring upon the board of appeals power in appropriate cases and subject to appropriate conditions and safeguards to vary the application of the " use " district regulations in case of difficulties or hard-

ships, constitute the authority of the board of appeals to act upon an application to permit the erection of a business building upon a plot of land, part of which was in a residence district, under sections 7 and 20 of the zone resolution adopted by the board of estimate and apportionment as amended.

3. A conclusion, therefore, that no zoning regulation adopted by the board of estimate and apportionment may in effect be repealed or set at naught by the board of appeals by action taken in the guise of a variance is not only in conflict with the expressed intention of the zoning statutes but likewise with the power delegated to the board of appeals directly by the legislature and by the board of estimate and apportionment pursuant to legislative authority. (*People ex rel. Facey* v. *Leo*, 230 N. Y. 602; *People ex rel. Helvetia Realty Co.* v. *Leo*, 231 N. Y. 619, followed.)

4. Upon appeal to the board of appeals of the city of New York from a decision of the superintendent of buildings denying a permit to erect a business building upon a certain plot of land upon the ground that a part thereof was within the bounds of a residence district as provided in a zoning resolution theretofore adopted by the board of estimate and apportionment, it is within the power of said board of appeals to vary, *i. e.*, to modify or alter in form or substance, the application of the regulations of the board of estimate and apportionment, by permitting erection of the proposed building, where as result of investigation it determines that there existed unnecessary hardships in the way of carrying out the strict letter of the provisions of the zone resolution, and that by permitting such erection substantial justice would be promoted both to the property owners and to the public interest.

*People ex rel. Sheldon* v. *Board of Appeals*, 200 App. Div. 907, reversed.

(Argued November 22, 1922; decided January 16, 1923.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 24, 1922, which unanimously affirmed an order of Special Term sustaining a writ of certiorari and annulling and setting aside a determination of the board of appeals of the city of New York upon the sole ground that said board had exceeded its jurisdiction.

*John P. O'Brien, Corporation Counsel* (*John F. O'Brien, Willard S. Allen* and *William T. Kennedy* of counsel), for

Board of Appeals et al., appellants. It is a reasonable conclusion of law that the legislature intended, by sections 242-b, 718-d, 719, subdivision 5, and 719-a, Greater New York charter, and that the board of estimate and apportionment, with legislative sanction, intended, by section 20 zone resolution, to delegate a broad measure of power directly to and to confer jurisdiction upon the board of appeals to determine, vary and modify the application of the statutes and of the use district regulations and to change the application of the statutes and of the regulations as affecting specific property, when that property cannot, as matter of fact, be reasonably utilized by the owner for the only purpose which the strict letter of the statutes and of the use district regulations prescribes. (*Village of S. S.* v. *S. G. Co.*, 191 N. Y. 123; *People ex rel. Facey* v. *Leo*, 230 N. Y. 602; *Adams* v. *Turner*, 244 U. S. 590; *People ex rel. Helvetia Realty Co.* v. *Leo*, 231 N. Y. 619; *Matter of Denel*, 116 App. Div. 512; *Cleveland* v. *City of Watertown*, 222 N. Y. 159; *Matter of Taxpayers of Plattsburg*, 157 N. Y. 78; *Crayton* v. *Larabee*, 220 N. Y. 493; *People ex rel. Cockcroft* v. *Miller*, 187 App. Div. 704; *People ex rel. Beinert* v. *Miller*, 188 App. Div. 113; *People ex rel. Unger* v. *Kennedy*, 207 N. Y. 533.)

*Henry W. Taft* and *Paxton Blair* for Farmers Loan and Trust Company, as trustee, etc., appellant. The action of the board of appeals was within its statutory power. (*Goodhue* v. *Cameron*, 142 App. Div. 470; *People ex rel. Healy* v. *Leo*, 194 App. Div. 973; *People ex rel. Ruth* v. *Leo*, 64 N. Y. L. J. 2195; affd., 197 App. Div. 942.)

*John G. Milburn, Walter F. Taylor* and *Edwin De T. Bechtel* for respondents. The action of the board of appeals was beyond its statutory powers. (*Woolcott* v. *Shubert*, 217 N. Y. 212; *Thompson* v. *Schermerhorn*, 6 N. Y. 92; *Birdsall* v. *Clark*, 73 N. Y. 73; *People ex rel. Beinert* v. *Miller*, 188 App. Div. 113.)

*Edward M. Bassett, amicus curiæ.*

HOGAN, J. The Farmers Loan and Trust Company, as trustee and executor of the last will and testament of William Waldorf Astor, deceased, is owner of eight lots of land each about ninety-five feet in depth on the westerly side of Madison avenue extending from Thirty-fifth street on the south to Thirty-sixth street on the north, also six lots immediately in the rear of the avenue lots and adjoining the same located on the northerly side of East Thirty-fifth street, and five lots on the south side of Thirty-sixth street, the street lots being approximately one hundred feet deep, making a plot of land two hundred feet on Madison avenue, two hundred forty-five feet on Thirty-fifth street, two hundred twenty feet on Thirty-sixth street.

By the building zone resolution adopted by the Board of Estimate and Apportionment of the city of New York on July 25, 1916, pursuant to power delegated to it by the legislature, the lots on the westerly side of Madison avenue, two hundred feet frontage, ninety-five feet in depth, were placed in the zone or district restricted to use for residence purposes. The balance of the block bounded by Fifth avenue on the west, Thirty-sixth street on the north and Thirty-fifth street on the south was placed in the zone district allotted to business, and included lots of land hereinbefore referred to on Thirty-fifth and Thirty-sixth streets.

November 16th, 1917, the owner of the property applied to the board of appeals for permission to erect a business building upon the described plot of land, submitted a proposed plan of the same and a verified petition with affidavits attached in support of the application. Prior to consideration of the application by the board of appeals, at the suggestion of the chairman of the board, the owner made application to the superintendent of buildings for a permit to erect the proposed building which permit was on December 5, 1917, denied upon the ground that the easterly portion of the plot

488    People ex rel. Sheldon v. Board of Appeals.

[234 N. Y. 484]        Opinion, per Hogan, J.        [Jan.,

proposed to be built upon was within a residence district as shown by the zone map. From such decision the owner appealed to the board of appeals. The latter named board then had before it the first petition for a variation of the use district regulations and the appeal from the decision of the superintendent of buildings.

The petition and accompanying affidavits presented to the board of appeals by the owner and likewise affidavits in opposition to the application contain many statements unnecessary to recite. Certain facts of a general character are pertinent tending as they do to disclose the location of the property of the owner, the purpose for which the same had been used, the changed condition of the locality and adaptability of the property at the time of the making of the application for a permit as stated. Such facts are that the plot of land in controversy for a long period of time formed a part of the most exclusive residential sections of the city. It was improved in or about the year 1870 by the erection of nineteen houses, eight of which fronted on Madison avenue, all of which were occupied as private residences down to about 1904 or 1905, since which time the advance of business northward across Thirty-fourth street and eastward from Fifth avenue across Madison avenue, has rendered their popularity and adaptability for use as private residences negligible. Madison avenue has become one of the main thoroughfares of the city, the busiest portion being between Thirty-fourth and Forty-second streets. In recent years sales of property thereon have been principally for business purposes. In 1918 south of the plot of land in question Madison avenue contained only seven residences on both sides of the same as far south as Twenty-third street. The value of the land on Madison avenue has depreciated at least fifty per cent by reason of the restriction of the same to residential purposes and since 1905 it has been difficult for the owner to obtain tenants for the houses, the principal tenants secured at a

decreased rental using the houses for rooming or boarding purposes, three houses only being occupied as residences.

Immediately south of the plot of land of appellant stands the Altman store bounded northerly by Thirty-fifth street, southerly by Thirty-fourth street, easterly by Madison avenue and westerly by Fifth avenue.

The blocks northerly of Altman's store from Thirty-fifth to Fortieth streets on the westerly side of Madison avenue by the zone map were restricted as follows: From Thirty-fifth to Thirty-seventh streets residence district, Thirty-seventh to Thirty-eighth streets business district, Thirty-eighth to Thirty-ninth street residence district, and Thirty-ninth street to Fortieth street business district.

After due notice by publication as required by law a public hearing was held by the board of appeals to consider the appeals pending before it. At such meeting counsel for the owner, appellant, and for parties in opposition were heard at length. On May 1, 1918, the board of appeals sustained the appeal and adopted a resolution wherein it imposed certain restrictions in relation to the building to be erected by the owner, quoted sections of the building zone resolution as to the power conferred upon it, and in its conclusions recited: " Whereas in the opinion of the Board of Appeals there are unnecessary hardships in the way of carrying out the strict letter of the provisions of the Building Zone resolution in this specific case; and appropriate conditions can be imposed upon the extension of the building into the residence district so as to properly safeguard the more restricted district; and the general purpose and intent of the Building Zone resolution to promote the general welfare and do substantial justice both to the property owners and to the public interest can best be served by permitting such extension  *  *  *."

The decision of the board of appeals affected only the frontage of the owner on Madison avenue, the lots on

490   People ex rel. Sheldon v. Board of Appeals.

[234 N. Y. 484]      Opinion, per Hogan, J.            [Jan.,

Thirty-fifth and Thirty-sixth streets being in a business district.

The courts below have decided that the board of appeals exceeded its power. In that event, the owner, appellant, argues that the zoning law is wholly invalid as the same is violative of its constitutional and property rights. A solution of the question involved necessitates consideration of the provisions of the charter of the city of New York.

Chapter 470, Laws of 1914, added two sections to the charter of the city of New York, numbers 242-a and 242-b. While the latter section, 242-b, is the section particularly applicable to the present case, I deem it important to quote material provisions of both sections as they read in 1916 when the zone resolution was adopted.

Section 242-a. " The board of estimate and apportionment shall have power to regulate and limit the height and bulk of buildings hereafter erected and to regulate and determine the area of yards, courts, and other open spaces," and in carrying out such purposes to divide the city into districts, adopt regulations which shall be designed to promote the public health and welfare. " The board shall pay reasonable regard to the character of the buildings erected in each district, the value of the land and the use to which it may be put to the end that such regulations may promote public health, safety and welfare and the most desirable use for which the land of each district may be adapted and may tend to conserve the value of the buildings and enhance the value of the lands throughout the city." The section further provided for the appointment of a commission to recommend boundaries and regulations, etc. Then followed a provision, " The board may from time to time after public notice and hearing, amend, supplement or change said regulations or districts but in case a protest against a proposed amendment, supplement or change * * * by the owners of twenty per centum or more of the frontage

directly opposite the frontage proposed to be altered, such amendment shall not be passed except by a unanimous vote of the board."

Section 242-b. " The board of estimate and apportionment may regulate and restrict the location of trades and industries and the location of buildings designed for specified uses, and may divide the city into districts of such number, shape and area as it may deem best suited to carry out the purposes of this section. For each such district regulations may be imposed designating the trades and industries that shall be excluded or subjected to special regulations and designating the uses for which buildings may not be erected or altered. Such regulations shall be designed to promote the public health, safety and general welfare. The board shall give reasonable consideration, among other things to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development in accord with a well considered plan." Then followed the same clause as to the appointment of a commission and amendments as embraced in section 242-a.

The " zone resolution " which embraced the completed work of the board of estimate and apportionment including the various district maps and regulations was adopted by the board July 25th, 1916. At the first session of the legislature following and in March, 1917, by chapter 601, Laws of 1917, there was added to sections 242-a, 242-b of the charter, clauses which read as follows: " Said regulations of the board of estimate and apportionment may provide that the board of appeals may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained."

At the time of the institution of the instant proceeding the zoning resolution, section 7 of article 2, provided:

" Section 7. Use district exceptions.— The board of

appeals created by chapter 503 of the Laws of 1916, may in appropriate cases, after public notice and hearing and subject to appropriate conditions and safeguards determine and vary the use of the district regulations herein established in harmony with their general purpose and intent as follows:   *   *   *

" (C)   Permit the extension of an existing or proposed building into a more restricted district under such conditions as will safeguard the character of the more restricted district."

Section 20 of article 5 provided: " *   *   *   Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this resolution, the board of appeals shall have power in a specific case to vary any such provision in harmony with its general purpose and intent, so that the public health, safety and general welfare may be secured and substantial justice done."

Contemporaneously with the amendments to sections 242-a and 242-b in 1917, the provision of the charter of the city relating to the board of appeals was amended so as to provide: The board of appeals " shall also hear and decide all matters referred to them, or upon which they are required to pass under any resolution of the board of estimate and apportionment adopted pursuant to sections 242-a, 242-b of this chapter." (L. 1917, ch. 601, section 718-d.)

The enumerated laws embodied the first comprehensive scheme relating to the division of the city of New York into districts and the class and character of the buildings to be permitted to be erected in such districts. In 1914 when the first statute was enacted the population of the city was upwards of five millions, the territory embraced within the boundaries of the city was three hundred ninety-five square miles; the city was rapidly increasing in population and commercial activity and one would needs be optimistic to conclude that the board of

estimate and apportionment in the labor assigned to it could avoid unreasonable discrimination.

A review of the several laws enacted clearly indicates that the legislature appreciated the far-reaching effect of any law bearing upon the subject of a division of the city into zone districts as affecting the constitutional rights of citizens in the use of their property and so far as possible with a view of protecting such rights concluded that the delegation of power to be conferred by it upon the board of estimate and apportionment, to adopt regulations for the use to which property might be adapted, should be limited to the adoption of regulations designed to promote public health, safety and general welfare, the conservation of property values, the suitability of each district for particular uses and the enhancement of the value of the land throughout the city.   In 1917, early following the adoption of the zone resolution, the legislature again emphasized the purpose and intent of the statute, when by chapter 601, Laws of 1917, it authorized the board of estimate and apportionment to provide in the regulations adopted by it that the board of appeals may determine and vary the application of the regulations made by the board of estimate and apportionment in harmony with their general purposes, so clearly defined in the preceding statutes.   Such amendment, when read in connection with section 718-d, enacted at the same time (Laws· of 1917, chapter 601), which empowered the board of appeals to hear and decide " * * * upon which they are required to pass " under any resolution adopted by the board of estimate and apportionment adopted pursuant to sections 242-a and 242-b after action by the board of estimate and apportionment in amending the zone resolution, constituted the authority of the board of appeals to act in the instant case under sections 7 and 20 of the zone resolution as amended.

The courts below held that no zoning regulation adopted

by the board of estimate and apportionment may in effect be repealed or set at naught by the board of appeals by action taken in the guise of a variance. Such conclusion is not only in conflict with the expressed intention of the zoning statutes but likewise with the power delegated to the board of appeals directly by the legislature and by the board of estimate and apportionment pursuant to legislative authority.

The board of estimate and apportionment pursuant to chapter 601, Laws of 1917, amended the regulations of the zone resolution by conferring upon the board of appeals power in appropriate cases and subject to appropriate conditions and safeguards to determine and vary the application of the use district regulations in harmony with their general intent and purpose (Section 7) also, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this resolution, in a specific case, to vary any such provision in harmony with its general purpose and intent that substantial justice may be done. (Article 5, section 20.) No question can arise as to the authority of the board of estimate and apportionment to thus amend the zone resolution regulations. The authority conferred by section 7 upon the board of appeals was to " determine and vary " the use district regulations. By section 20 to " vary " any provision of the resolution in a specific case, where substantial justice will result therefrom. The words " determine and vary " as used in the statute and the amended zone resolution must receive a reasonable construction.

When the instant case was before the board of appeals it was required by law to hold a public hearing on the application and appeal pending before it and as a result of the hearing and investigation to conclude and decide the question arising thereon and thereupon to " determine " the disposition to be made relating thereto. If as the result of investigation the board of appeals shall

" determine," as it did in this specific case, that there existed unnecessary hardships in the way of carrying out the strict letter of the provisions of the zone resolution and that substantial justice would be promoted both to the property owners and the public interest, its power then was enlarged to " vary," *i. e.*, to modify or alter in form or substance the application of the regulations of the board of estimate and apportionment in the specific case which it did by permitting the building which the owner proposed to erect upon his lots embraced in the business district to be extended so as to cover the lots fronting on Madison avenue.

In the instant case counsel for respondent argued that the board of estimate and apportionment having been authorized under section 242-b of the charter " from time to time to amend, supplement or change said regulations and districts," the power to change the boundaries of a district was vested exclusively in the board of estimate and apportionment, and that the legislature did not authorize that board to delegate such power to the board of appeals.

The argument of counsel would be more forceful if our consideration of the provisions of the charter was confined to the time when the zone resolution was adopted, July 25, 1916. For reasons which evidently appealed to the legislature, that body at its first session following the adoption of the zone resolution amended the provisions of the charter as hereinbefore quoted and thereupon the board of estimate and apportionment amended the regulations in the manner to which reference has been made.

We must assume that the law-making body intended to effect a material change in the existing law, otherwise the legislation would be nugatory. The amendments of 1917 were accepted by the city before the measure received the sanction of the governor.

In *People ex rel. Facey* v. *Board of Appeals* (230 N. Y. 602), a case arising under section 242-b of the charter,

and *People ex rel. Helvetia Realty Co.* v. *Leo* (231 N. Y. 619), arising under section 242-a of the charter, the argument made by counsel for respondent in this case was urged by counsel for relators in the *Facey* and *Helvetia* cases. In the *Facey* case, one French, the owner of a plot of land in a residence district, upon which were located two frame houses and a frame stable, made application to the superintendent of buildings for a permit to erect a public garage planned to cover the entire premises. The application was denied for the reason that the zone resolution prohibited the erection of a public garage in a residence district unless consents of eighty per cent of the owners affected should be obtained. No consents were obtained by the owner. Upon appeal to the board of appeals the board changed the application of the zone resolution and authorized the erection of the proposed garage in a residence district.

Concluding as we do that the legislation under consideration authorized the board of estimate and apportionment to confer upon the board of appeals the authority exercised by the latter board in the instant case, and that the amendments to the regulations, a part of the zone resolution adopted by the board of estimate and apportionment were in consonance with the legislative intention, the orders of the Special Term and Appellate Division should be reversed and the writ of certiorari dismissed, with costs to appellants in all courts.

HISCOCK, Ch. J., CARDOZO, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Orders reversed, etc.