J. PAYSON BRADLEY & others *vs.* THE BOARD OF ZONING ADJUSTMENT OF THE CITY OF BOSTON.

Suffolk.    November 11, 12, 1925. — February 27, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Zoning.    Certiorari.    Boston.    Constitutional Law,* Division of executive, legislative and judicial departments.

The word "certiorari," as used in § 20 in the Boston zoning statute, St. 1924, c. 488, imports its usual meaning and function under the uniform and long established practice in this Commonwealth and, in a proceeding of that character, instituted under that section, only errors of law can be reviewed: findings of fact are not open to revision, and it is not proper for the board, whose proceedings are being reviewed, to append to its answer and return a full report of evidence or statements made before them at the hearing which is the subject of the certiorari proceedings.

The provisions of St. 1924, c. 488, § 20, constituting and defining the powers of the board of zoning adjustment of the city of Boston, are not unconstitutional in respect to the composition and appointment of the board or in respect to its power to change the boundaries of districts established by the Legislature.

At the hearing of a petition under St. 1924, c. 488, § 20, for a writ of certiorari against the board of zoning adjustment of the city of Boston as to proceedings relating to a change made by the board under that section, it is not open to the petitioners to show, by evidence outside the record, that the conditions which would warrant the board in deciding to make a change in the districts and the zoning map did not exist.

The specific requirement of St. 1924, c. 488, § 20, that notice of a hearing granted by the board of zoning adjustment of the city of Boston under the provisions of that section shall be by mail, should be followed. *Whether*, in the circumstances, failure to observe that requirement in this proceeding would require the issue of a writ of certiorari, was not determined, the writ being ordered for other reasons.

Action by the board of zoning adjustment of the city of Boston, under § 20 of St. 1924, c. 488, making a change in the boundary of a district on the zoning map, must be for one or more of the seven specific grounds therein enumerated and must be so stated in the detailed record of their decision and proceedings required by the statute: a decision, the record of which stated merely that a designated "change shall be made with a view to conserving the value of buildings and encouraging the most appropriate use of land, and also in consideration of the character of the district and its peculiar suitability for particular uses," does not show action by the board within the powers conferred by the statute and requires the issuance of a writ of certiorari.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on October 20, 1924, for a writ of certiorari commanding the respondents to return to this court a perfect record of their proceedings relative to the change of boundary of district lines in the neighborhood of Audubon Road on the petition of Lockwood, Greene and Company, engineers, to the end that said proceedings might be quashed, or such order, judgment or decree might be made with respect thereto as law and justice might require.

The respondents answered by filing what they alleged was "a certified copy of the record of the proceedings referred to in the said petition." The record submitted included an application by Lockwood, Greene and Company, engineers, for a hearing by the board "relative to a proposed terminal and manufacturing development to be located at the corner of Brookline Avenue and Audubon Road"; a designation of a hearing by the board; a list of persons whom the board "deemed . . . all owners of all property to be affected by the change requested . . . as they appeared on

the most recent tax list"; the form of notice sent, and certificates by a constable of service upon the persons named in the list. Six of these certificates showed service by leaving a notice at the alleged last and usual place of abode; eight by service in hand; one by delivery to a wife; three by delivery to a "person in charge" of a place of business; eight by delivery to officers. The record attached to the answer also included a full transcription of the statements made by proponents and opposers at the hearing before the board, a record of the executive meeting of the board when action upon the application was taken, the board's final decision, and notice thereof.

The case was heard by *Braley*, J., who reserved it for determination by the full court upon the petition, answer and return and certain facts which, "if admissible," he found to be true. The last paragraph of his finding of facts was as follows: "The board's change in the zoning line was not made with reasonable consideration of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of the land. On the contrary, the board of adjustment, perhaps dazzled by the immensity of the project and the great advantage which they conceived would accrue to the city from having such an enterprise established within its limits, made such change solely to enable Lockwood, Greene and Company to erect upon the tract in question their proposed terminal building, without regard to the effect on the general principles established by St. 1924, c. 488, or its effect upon the property in the vicinity."

*P. Nichols*, for the petitioners.

*L. Schwartz*, Assistant Corporation Counsel, for the respondent.

RUGG, C.J. This is a petition for a writ of certiorari brought under St. 1924, c. 488, § 20. That chapter is entitled, "An Act regulating and restricting the use of buildings and premises, the height and bulk of buildings and the occupancy of lots in the city of Boston and for said purposes dividing the city into districts." The title fairly outlines

the scope of the act. By its terms the city of Boston is divided into six districts, according to use, as delineated on a zoning map, with great detail of description as to the permissible uses and with further divisions regulative of height and bulk of buildings. By § 20 of that act the board of zoning adjustment is created and clothed with power, on compliance with certain provisions, to change the boundaries of such districts to accomplish specified objects. When decision to make such change has been made by the board of zoning adjustment, "any person aggrieved . . . may, within fifteen days after the entry of such decision, bring a petition . . . for a writ of certiorari setting forth that such decision is in whole or part not in accordance with the duties and powers of such board as above prescribed and specifying the particulars of such non-compliance . . . ." The provisions of the General Laws governing certiorari "shall except as herein provided, apply to said petition."

1. The use of "certiorari" in this context in the statute imports its usual meaning and function under the uniform and long established practice in this Commonwealth. Certiorari is an extraordinary writ. Its purpose is to enable a party, without other remedy for errors of law committed against his rights, to bring the true record of an inferior judicial or quasi judicial tribunal, properly extended so as to show the principles of its decision, before a superior court for examination as to material mistakes of law apparent on the face of such record. Only errors of law can be reviewed. Findings of fact are not open to revision. The full report of the evidence incorporated in the present return was unnecessary and an encumbrance of the record. *Farmington River Water Power Co.* v. *County Commissioners,* 112 Mass. 206, 212, 217. *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 544. *Mayor of Medford* v. *Judge of First District Court of Eastern Middlesex,* 249 Mass. 465, 468, and cases there collected.

There is nothing in the present statute which warrants any departure from the established practice. If it had been the intention of the General Court to provide an appeal to this court on the facts or for a review of the decision of

the board of zoning adjustment on its merits, it would have been simple to use language declaratory of·such purpose. The absence of any express provision to that end denotes that certiorari in the statute means the remedy commonly afforded by our laws and procedure under that name.

2. The constitutionality of the provisions of said c. 488 is assailed in respect to the composition and appointment of the board of zoning and adjustment (hereinafter called the board) and in respect to its power to change the boundaries of districts established by the Legislature. It becomes necessary to state the salient provisions of the statute so far as material to these contentions.

The first two sentences of § 20 of said c. 488, being a large. portion of its first paragraph, are in these words: "There shall be a board of zoning adjustment to consist of twelve members as follows: — The chairman of the city planning board ex officio, and eleven members appointed.by the mayor in the following manner: one member from two candidates nominated by the Associated Industries of Massachusetts, one member from two candidates nominated by the Boston Central Labor Union, one member from two candidates nominated by the Boston Chamber of Commerce, one member from two candidates to be nominated by the Boston Real Estate Exchange, one member from two candidates to be nominated by the Massachusetts Real Estate Exchange, one member from two candidates, one to be nominated by the Boston Society of Architects and one by the Boston Society of Landscape Architects, one member from two candidates to be nominated by the Boston Society of Civil Engineers, one member from two candidates to be nominated by the Master Builders' Association of Boston, one member from two candidates to be nominated by the Team Owners Association, one member from two candidates to be nominated by the United Improvement Association, and one member to be selected by the mayor. All appointive members shall be residents of or engaged in business in Boston."

The attack on this part of the statute is based upon the contention that the freedom of appointment naturally ap-

purtenant to the power to name a public officer is curtailed beyond constitutional bounds. The succinct statement of the principle, which, it is contended, strikes down these provisions of said § 20, is found in the opinion of Chief Justice Field in *Brown* v. *Russell,* 166 Mass. 14, at page 25, in these words: "In offices which are created by the Legislature, where the method of appointment is not prescribed by the Constitution, the Legislature, if no limitation is put upon its power by the Constitution, can take upon itself the responsibility of selecting the persons to be appointed, or can confer the power of appointment upon public officers or boards, or upon the inhabitants of cities, towns, or districts; but we think that it is inconsistent with the nature of our government, and particularly with articles 6 and 7 of our Declaration of Rights, that the appointing power should be compelled by legislation to appoint to public offices persons of a certain class in preference to all others, without the exercise on its part of any discretion, and without the favorable judgment of some legally constituted officer or board designated by law to inquire and determine whether the persons to be appointed are actually qualified to perform the duties which pertain to the offices." This statement, invoked by the petitioners, was made in the course of a discussion which reached the conclusion that a statute, purporting to give to veterans absolute, particular and exclusive privileges distinct from those of the community in obtaining public office, was in violation of the fundamental law. Its soundness is not open to question. But it is not applicable to the statute here assailed, in the light of the facts to which the Legislature manifestly was directing its attention.

The many particular districts established by said c. 488, based upon the use and height and bulk of buildings, are scattered widely over the territory of the city of Boston, and those of the same class are by no means contiguous. The adoption of any such scheme of improvement for one of the oldest cities in the country must recognize to a large extent existing customs as to business, ocean shipping, commerce, manufacture and residence. Changes in the boundaries of districts once established require the exercise of a high degree

of practical wisdom. The members of any board charged with this important and delicate duty are public officers as distinguished from employees. *Attorney General* v. *Drohan*, 169 Mass. 534, 535. *Attorney General* v. *Tillinghast*, 203 Mass. 539, 543 to 545. A statute designed to secure men of eminent sagacity for the performance of these duties is entitled to every presumption in its favor. The names of the several societies, charged by the statute with nominating the individuals from whom the appointments must be made, indicate in general that they are composed of members particularly interested in special subjects having direct relation to various aspects of the public welfare likely to be affected by zoning districts in a great seaport, manufacturing and residence city. The record does not disclose the chartered or declared purposes of these several societies. In favor of the constitutionality of a legislative enactment, inferences may be drawn from their names. It may well be thought that the Associated Industries of Massachusetts have immediate concern for the maintenance and expansion under favoring conditions of all branches of manufacture and industry, the Boston Central Labor Union for sanitation, safety and suitableness of location of places where work is performed by considerable numbers of employees, the Boston Chamber of Commerce for mercantile, commercial and transportation facilities and improvements, the two named real estate exchanges for the rational extension and development of all uses of land and buildings in and around Boston, the Boston Society of Architects for the scientific study of building construction and of convenience, beauty and dignity of edifices for all kinds of business and residence, the Society of Landscape Architects for the appropriate and beautiful setting of structures of every description with reference to present and future surroundings, the Master Builders' Association for suitable material and structural strength of buildings of all kinds, the Team Owners Association for facilities and freedom from congestion of street traffic, and the United Improvement Association for civic betterment in all its physical relations. The executive officers and the members of these several societies may be

thought to know the persons possessing the finest expert knowledge and widest practical experience touching the various departments of activity indicated by their names. The nominations are not required to be made from the membership of the several societies. A wide field is open to the nominating societies to find those best adapted by character, learning, experience and common sense to perform the specified duties. The qualifications of persons appointed from nominees thus presented to the appointing officer doubtless were supposed by the Legislature to be likely to be superior to an exceptional degree. The scheme of the statute is to provide by statutory sanction expert advice of unusual quality for the aid of the appointing power. Its design is to secure the administrative and executive ability of men of experience and vision in municipal planning to meet the exigencies of the present and the prospective needs of the future. Every presumption must be indulged (in the absence of a contrary indication) in favor of the view that the duty of making nominations imposed by the statute on the several societies will be performed with a genuinely zealous purpose to present to the consideration of the appointing officer the names of the best men obtainable for the service. *Nevins* v. *City Council of Springfield,* 227 Mass. 538, 541. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50. *Adams* v. *Whitmore,* 245 Mass. 65, 68.

There are numerous provisions of the statutes whereby the appointing power is limited to specified classes of persons; sometimes, also, with geographical limitations. For example, the board of registration in medicine must consist of graduates of a legally chartered medical college or university having the power to confer degrees in medicine, who have been engaged for ten years in the active practice of medicine, not belonging to the faculty of any medical school, and not more than three of whom shall be at one time members of the same chartered State medical society. G. L. c. 13, § 10. See, also, restrictions upon power of appointment to the board of registration of nurses, G. L. c. 13, § 13, the board of registration in optometry, § 16, board of dental examiners, § 19, board of registration in pharmacy,

§ 22, board of registration in veterinary medicine, § 26, board of registration in embalming, § 29. There are statutory provisions for representation of political parties on boards of public officers, G. L. c. 6, § 29; c. 51, § 18; c. 54, § 13, St. 1895, c. 449, § 3, St. 1907, c. 560, § 79, and of employers and employees, G. L. c. 23, § 1, and of territorial divisions of the Commonwealth, G. L. c. 221, § 35, St. 1895, c. 488, § 1, St. 1924, c. 491, § 1. Other limitations upon the power of appointment are based on sex, occupation or official position in private institutions. See G. L. c. 15, § 1, as to advisory board of education, and G. L. c. 26, § 10, as to trustees of the general insurance guaranty fund, and St. 1907, c. 550, § 6, as to board of appeal under building laws of Boston. This is not intended to be an exhaustive enumeration, but simply illustrative. While the constitutionality of these statutes has not been established by judicial adjudication, it is significant of general understanding by the legislative and executive departments of government that so many statutes of this nature have been enacted.

The constitutionality of St. 1818, c. 113, § 1, was presented in *Hewitt* v. *Charier*, 16 Pick. 353. The statute there under consideration in effect prohibited the practice of medicine except by those licensed by the Massachusetts Medical Society or graduated a doctor in medicine in Harvard University. The validity of the statute was vindicated as not repugnant to article 6 of the Declaration of Rights or in violation of any principle of the Constitution. In *Opinion of the Justices*, 154 Mass. 603, the validity was upheld of Pub. Sts. c. 70, § 2, which provides that the commissioners of pilots "appointed by the governor . . . shall first be recommended by the trustees of the Boston Marine Society . . . ." See now G. L. c. 103, as amended by St. 1923, c. 390, § 1. Apparently the Boston Marine Society is a private corporation whose purposes are intimately connected with the safety and improvement of navigation and the charitable relief of seafaring men and their families. 3 Prov. Laws, 708, c. 16, approved January 25, 1754. So far as concerns authority, the case at bar seems to be covered by the last two citations. Their applicability is sufficiently obvious without further discussion.

An earlier form of the statute requiring the appointment by the Governor of commissioners of pilots for the harbor of Boston and the licensing of pilots by such commissioners only upon recommendation and approval by the Boston Marine Society, Rev. Sts. c. 32, §§ 15–24, was considered in *Commonwealth* v. *Ricketson*, 5 Met. 412, where at page 417 it was said by Chief Justice Shaw, "It is obvious from the course of legislation upon this subject, that it has been, for a series of years, the wise policy of the law of this Commonwealth to provide for the employment of a body of men, as pilots, of competent skill and experience, to take charge of vessels both inward and outward bound . . . . The requisite skill and experience are insured by providing that they shall receive their authority by public appointment, upon the recommendation of persons of established experience and skill themselves."

Other of our decisions look in the same direction. It was said in *Commonwealth* v. *Plaisted*, 148 Mass. 375, 387, respecting a statute requiring the Governor to appoint members of the police board of the city of Boston "from two principal political parties"; that it "is designed to secure, in the action of the board, impartiality and freedom from political bias. It can probably be regarded only as directory to the Governor, and not as an element in the tenure of the office; in either view, it violates no provision of the Constitution." In *Kingman, petitioner*, 153 Mass. 566, 568, 580, it was held that a statute was constitutional providing for apportionment commissioners not residents of any of the cities and towns concerned.

There is nothing in these provisions which constitutes an assumption of executive powers by the Legislature. The statute is general in terms. It deals wholly with the method of appointment of the officers and relates to the method of exercise of executive functions. See *Opinion of the Justices*, 208 Mass. 610; *Boston* v. *Chelsea*, 212 Mass. 127, *Commonwealth* v. *Leach*, 246 Mass. 464.

Similar questions have arisen in other States. The great weight of authority supports the constitutionality of such statutes. *Sturgis* v. *Spofford*, 45 N. Y. 446. *Scholle* v.

*State,* 90 Md. 729, 742.  *Allopathic State Board of Medical Examiners* v. *Fowler,* 50 La. Ann. 1358, 1374.  *Ex parte Frazer,* 54 Cal. 94.  *State* v. *State Medical Examining Board,* 32 Minn. 324.  *McCurdy* v. *Jessop,* 126 Md. 318, 322.  *Overshiner* v. *State,* 156 Ind. 187.  *Matter of Kane* v. *Gaynor,* 144 App. Div. (N. Y.) 196, 197.  See *State* v. *Finger,* 48 Ohio St. 505.  There are, however, decisions of a contrary appearance.  *State* v. *Washburn,* 167 Mo. 680.  *Lasher* v. *People,* 183 Ill. 226.

The result is that, with some hesitation, we are of opinion that the part of the first paragraph of § 20 of said c. 488, touching the appointment of members of the board, does not violate articles 6, 7 and 30 of the Declaration of Rights.

3. Extensive powers are conferred on the board to change the boundaries of districts and the zoning map as established by other sections of said c. 488.  Those powers and the limitations and conditions of their exercise are stated in these words, which constitute the second paragraph of said § 20: "Either upon petition or otherwise, the board may, subject to the following conditions, change the boundaries of districts by changing the zoning map, on file at the state secretary's office, [1] to meet altered needs of a locality, [2] to avoid undue concentration of population, [3] to provide adequate light and air, [4] to lessen congestion in streets, [5] to secure safety from fire, panic and other dangers, [6] to facilitate the adequate provision of transportation, water, sewerage and other public requirements and [7] to promote the health, safety, convenience and welfare of the inhabitants of the city of Boston.  Such changes shall be made with reasonable consideration, among other things, of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land.  No such change shall be made except by the decision of not less than four fifths of the members of the board, excepting only any member or members not qualified to act, rendered after a public hearing thereon, of which notice shall be mailed to the petitioner, if any, to the building commissioner, the chairman of the assessing department, the chairman of the street lay-

ing-out department, the commissioner of public works, the fire commissioner and the health commissioner of the city of Boston, and to the owners of all property deemed by the board to be affected thereby as they appear in the most recent local tax list and also advertised in a daily newspaper published in the city of Boston. No member shall act in any case in which he is personally interested either directly or indirectly."

In earlier days, the argument that the powers conferred upon the board amounted to an unlawful delegation of legislative authority would have demanded serious consideration. In the light of a group of comparatively recent decisions, where that subject has been discussed fully, there can no longer be serious doubt that in this particular the statute does not offend any provision of the Constitution. This is true even though the board is given power to change on the terms stated in the statute the boundaries of the several districts or zones established by the Legislature itself. These decisions need not be reviewed nor analyzed. It is enough merely to cite them. They amply cover this aspect of the case at bar. *Welch* v. *Swasey,* 193 Mass. 364. *Brodbine* v. *Revere,* 182 Mass. 598. *Nelson* v. *State Board of Health,* 186 Mass. 330. *Commonwealth* v. *Sisson,* 189 Mass. 247. *Dewey* v. *Richardson,* 206 Mass. 430. *Commonwealth* v. *Fox,* 218 Mass. 498. *Commonwealth* v. *Hyde,* 230 Mass. 6. *Commonwealth* v. *Slocum,* 230 Mass. 180. *Opinion of the Justices,* 234 Mass. 597. *Ayer* v. *Commissioners on Height of Buildings in Boston,* 242 Mass. 30. *Inspector of Buildings of Lowell* v. *Stoklosa,* 250 Mass. 52.

4. It was not open to the petitioners to show by evidence outside the record, at the hearing before the single justice upon the petition for the writ of certiorari, that the conditions which would warrant the board in deciding to make a change in the districts and the zoning map did not exist. That conclusion follows irresistibly from the nature of the writ of certiorari. *Ward* v. *Aldermen of Newton,* 181 Mass. 432. *Byfield* v. *Newton,* 247 Mass. 46, 53. *Westport* v. *County Commissioners,* 246 Mass. 556. As already pointed out, this present statute does not enlarge the scope or change

the nature of that writ or the procedure under it as heretofore known and practised in this Commonwealth.

5. It is required in the second paragraph of said § 20 already quoted that the board shall mail notice of the public hearing respecting any proposed change in the boundaries of districts to the owners of all property deemed to be affected by the petition. It appears that the notice was not mailed to the owners of dwelling houses deemed to be affected but was served by a constable, and that at that season of the year, late in August or early in September, several did not in fact receive any notice whatever, because their residences were closed, and the notice left by the constable was not and would not in the natural course of events be forwarded, while a notice sent by mail as required by the statute would in ordinary course have been forwarded. If notice actually had been received seasonably, it well might be that the particular method of service would be a matter of indifference. But when the statute specifies a definite kind of service and the statute is not followed and the notice is not in fact seasonably received, then a different situation arises. It appears in the case at bar that in several instances the only service of the notice on the landowner was by leaving copy at his last and usual place of abode. Some of those thus served did not appear at the hearing, another appeared and protested on account of lack of sufficient service, while others appeared and protested against the proposed change but did not complain of the notice. Whether writ of certiorari ought to issue on this ground alone on this record need not be determined, because it must issue for a more fundamental reason.

6. The second paragraph of said § 20 enumerates seven different carefully and clearly specified grounds on which the board may make changes in the boundaries of districts and the zoning map. These seven grounds or reasons for convenience are indicated by the insertion of arabic numerals in brackets in the quotation already made. These specifications are in the nature of limitations upon the power of the board. Unrestricted authority to change boundaries is not conferred. The context in which this grant of power

occurs carries implications of constraint.  In earlier sections of said c. 488, the Legislature itself established the boundaries of districts with precision by reference to the zoning map on file in the office of the Secretary of the Commonwealth.  It would not be likely that a grant of power would be made to change that which the Legislature had itself been at such pains to establish, except upon definite terms and by strict compliance with named conditions.  These seven specified grounds or reasons doubtless were intended to be used distributively and not conjunctively, notwithstanding the use of the word "and."  That word is not infrequently found to have been used in the sense of "or" in the interpretation of statutes.  *Darling* v. *Homer*, 16 Mass. 288.  *United States* v. *Fisk*, 3 Wall. 445, 447.  Any one of the seven grounds enumerated in the statute might form the basis of a change of boundaries of districts by the board.  But no change whatever can be made except for one or more of those seven reasons.

In the third paragraph of said § 20 is the further provision that "The board shall cause to be made a detailed record of all its proceedings, which record shall set forth the reasons for its decisions. . . ."  That cannot be regarded as a perfunctory or merely directory provision.  It is definite and peremptory.  There is firm ground for requiring strict compliance with such a statutory mandate.  It is a strong protection against hasty, careless, or inconsiderate action to require a public board to put in writing a full statement of its reasons for action.  The vote in the case at bar, as shown by the return, after stating the extent of the change, was that "said change is made with a view to conserving the value of buildings and encouraging the most appropriate use of land in said vicinity, and also in consideration of the character of the district, and its peculiar suitability for particular uses."  Those words were repeated in the order changing the district signed by the members of the board.  It is to be observed that those words are but a slight paraphrase of the second sentence of the second paragraph of said § 20 already quoted.  Those words of the statute, however, do not constitute a statement of any one of the grounds or

reasons on which the boundaries of a district may be changed under the first sentence of the second paragraph of § 20. Those words are a legislative mandate which must govern the board in all instances where for any permissible reason a change in the boundary of a district and in the zoning map is made. Those words are a definite admonition that no change can be made except by a strict observance of the conditions thus stated. Those considerations must be given reasonable weight in making every change. The board must state that any change in the boundary of a district made by it conforms to those essential and constant underlying requisites. But the sole grounds or reasons upon which any change can be founded are one or more of the seven specified with particularity in the first sentence of the second paragraph of said § 20. No one of those seven grounds or reasons is stated in the record of the board. For aught that appears, the change here challenged may have been made merely because the board disagreed with the boundaries and zoning map as established by the Legislature. However that may be, it is manifest that the record as shown by the return is bare of any statement of the reasons for its decision, which are recognized as valid or within its jurisdiction under the statute. This is fatal to the validity of the change attempted to be made by the board. This conclusion does not mean that the requirement for a statement of reasons must be so detailed as to become a pitfall. But there must be an explicit compliance with the statute by a statement of the actual reasons grouped under one or more of the seven general classifications of reasons found in the first sentence of the second paragraph of § 20. One or more of those reasons must move the board to action and must be so stated in the record. Those are the only reasons for which a change is permitted. Other reasons, whatever they are, do not authorize a decision by the board to make a change.

*Writ of certiorari to issue.*