FREEMAN, TRUSTEE, APPELLANT, *v.* BOARD OF ADJUSTMENT OF CITY OF GREAT FALLS ET AL., RESPONDENTS.

(No. 7,252.)

(Submitted June 1, 1934. Decided June 29, 1934.)

[34 Pac. (2d) 534.]

*Messrs. Freeman, Thelen & Freeman,* for Appellant, sub-mitted a brief; *Mr. Ernest Abel* of Counsel, argued the cause orally.

*Mr. Charles Davidson,* City Attorney of Great Falls, for Respondents Board of Adjustment and Edward Henen, Building Inspector, and *Mr. George E. Hurd,* for Respondent L. B. Clark, submitted a brief; *Mr. Hurd* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Cascade county affirming an order of the board of adjustment of the city of Great Falls, whereby the board ordered the city building inspector to issue a certain building permit to one L. B. Clark, one of the respondents herein.

In 1930 the city of Great Falls enacted a zoning ordinance. It was enacted and became effective on April 24, 1930. This ordinance was enacted and adopted in conformity with Chapter 136, Laws of 1929. It classified "use districts" of the city of Great Falls as follows: (1) Suburban districts; (2) "A" residence districts; (3) "B" residence districts; (4) "C" residence districts; (5) local business districts; (6) general commercial districts; (7) first industrial districts; (8) second industrial districts.

This ordinance, enacted "for the purpose of classifying, regulating and restricting the location of trades and industries and the location of buildings designed for specified uses" within the city, provided that "no building shall be erected, altered or used, and no premises shall be used for any purposes except in conformity with all the regulations herein prescribed for the use district in which such buildings or premises are located."

The uses permissible within each district are specifically set out and enumerated in the ordinance. In general, the uses

permitted in "A" residence districts are confined to single family dwellings, schools and colleges, parks and recreation buildings. In "B" residence districts the uses permitted are any use permitted in "A" residence districts, family dwellings, lodging-houses, churches and temples, libraries and museums, and institutions of an educational nature. In the "C" residence districts the following uses are permitted: (1) Any use permitted in "A" and "B" residence districts; (2) apartment houses and multiple dwellings; (3) apartment hotels; (4) clubs and fraternity houses; (5) hospitals; (6) public service substations; (7) telephone exchanges; (8) railroad passenger stations; and (9) police and fire department stations.

The ordinance provides that anyone desiring to erect a building or to occupy any land within any of the districts must first secure from the city building inspector a certificate of occupancy. It further provides for the creation and establishment of a board of adjustment, the board to consist of five members appointed by the mayor, and to be subject to confirmation by the city council. The principal duty and function of this board is to hear and determine appeals from the rulings of the building inspector concerning the enforcement of the provisions of the ordinance. Provision is made regulating and specifying both the procedure for taking an appeal to the board, and the nature of the proceedings thereafter.

The powers of the board, as enumerated in the ordinance, are in part as follows: "1. To hear and decide appeals where it is alleged there is error in order, requirement, decision or determination made by an administrative official in the enforcement of this ordinance. 2. To hear and decide special exceptions to the terms of this ordinance. 3. To authorize upon appeal in specific cases such variance from the terms of this ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this ordinance will result in unnecessary hardship, and so that the spirit of this ordinance shall be observed and substantial justice done. In exercising the above mentioned power, such board may in conformity with the pro-

visions of this ordinance reverse or affirm wholly or partly or modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and to that end shall have the powers of the officer from whom the appeal is taken."

In 1930, when the zoning ordinance was enacted, the respondent Clark was engaged in the retail grocery business at 812 Seventh Avenue North, on lot 4, block 136, of the town site of Great Falls. The appellant was owner of the building and premises, and Clark rented from him upon a month to month basis. The east half of block 136 was placed in the local business district, and the west half of the same block was in the "C" residence district.

The property at 812 Seventh Avenue North had been used for many years for the purpose of carrying on a retail grocery business. Clark had conducted such business therein since February, 1929. Since a grocery store was being conducted at this location prior to and at the time when the zoning ordinance was passed, it was not affected by the ordinance, although under it such a use was not generally permissible in the "C" residence district. This was because of an exception in the ordinance to the effect that uses in existence at the time of the adoption of the ordinance should not be disturbed thereby.

On July 1, 1932, Clark petitioned the board of adjustment for a permit to construct a building for combined retail grocery and residence purposes at 800 Seventh Avenue North. This location was in the same block and only a short distance from the location at 812 Seventh Avenue North, which Clark was then renting from appellant. Clark became the owner of this property (800 Seventh Avenue North) on July 6, 1932. On the same day the board of adjustment, on direct application of Clark, granted him a permit to construct a building at 800 Seventh Avenue North. After receiving the permission of the board, Clark entered into a contract with one E. L. Cowan for the construction of a building. On September 15, 1932,

Cowan obtained a permit from the city for the construction of the building, and the work began.

Seeking to vacate the order of the board of adjustment made on July 6, and the building permit granted on September 15, appellant then filed a petition for a writ of review in the district court of Cascade county. The writ was based on the grounds that the application had been made direct to the board in the first instance, and not upon an appeal from the decision or action of the administrative officer of the city. On November 28, 1932, the district court entered judgment annulling the order of the board and thereby canceling the permit issued direct to Clark.

Thereafter, on December 2, 1932, Clark, seeking a permit to build a store and residence building at 800 Seventh Avenue North, filed an application with the city building inspector. This application was denied on the grounds that the proposed location was within a "C" residential district, and that, under the zoning ordinance, grocery stores could not be erected within that district. Clark then appealed to the board of adjustment. Notice was given and a hearing was conducted by the board. Appellant appeared to protest the application. Witnesses were called and evidence was produced by both sides. On December 10, 1932, the board made an order (all five members concurring) that the permit should be granted to Clark. It was recited in the order that the board found that the grant of the permit to Clark and the variations of the terms of the zoning ordinance would not be contrary to the public interest, safety, health, convenience, prosperity or general welfare; that, owing to special conditions, a literal enforcement of the provisions of the zoning ordinance would result in unnecessary hardship; and that the variation should be allowed so that the spirit of the ordinance should be observed and substantial justice done.

Thereafter, on January 9, 1933, upon application of appellant, the district court of Cascade county ordered a writ of review to be issued requiring respondents to file a return to the court of the proceedings had before the board of adjust-

ment. Respondents filed a return, including copies of the ordinance and other papers involved, together with the transcript of the evidence introduced before the board on the appeal of Clark from the order of the city building inspector. The court reviewed the proceedings and the evidence adduced before the board. Thereafter, on October 2, 1933, the court made an order affirming the order of the board. In this decree the court held that there was sufficient evidence to sustain the action of the board of adjustment in the matter. From the decree of the district court, appellant prosecutes an appeal to this court.

Appellant relies upon five assignments of error. It seems to us, however, that there are but three propositions involved, viz.:

(1) Is Chapter 136, Laws of the Twenty-first Legislative Assembly, 1929, constitutional?

(2) Is the ordinance of the city of Great Falls, enacted under the authority of Chapter 136 and creating the board of adjustment and defining its duties and powers, a legal grant of power?

(3) Were the facts and circumstances as presented to the board, and later reviewed by the district court, sufficient to sustain the order of the board?

When zoning ordinances were first enacted, they were generally attacked as unconstitutional on the ground that they were in derogation of section 1 of the Fourteenth Amendment to the federal Constitution. It was claimed that they deprived the owner of liberty and property without due process of law, and denied the equal protection of the law. The trend of the modern decisions, however, is to sustain the validity of such ordinances and the statutes authorizing them. (*Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 47 Sup. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; *State ex rel. Oliver Cadillac Co.* v. *Christopher*, 317 Mo. 1179, 298 S. W. 720; *Pettis* v. *Alpha Alpha Chapter, etc.*, 115 Neb. 525, 213 N. W. 835; *Zahn* v. *Board of Public Works*, 274 U. S. 325, 47 Sup. Ct. 594, 71 L. Ed. 1074; *American Wood Products Co.* v. *Minne-*

*apolis,* (D. C.) 21 Fed. (2d) 440; *Nectow* v. *Cambridge,* 277 U. S. 183, 48 Sup. Ct. 447, 72 L. Ed. 842.) The authorities are collected in annotations in 54 A. L. R. 1030, 86 A. L. R. 659, 19 A. L. R. 1395, 33 A. L. R. 287, 38 A. L. R. 1496, and 43 A. L. R. 668.

It is not necessary to enter into a lengthy discussion of this question. It seems to us that the weight of judicial opinion so clearly preponderates in support of such provisions that we may well take the principle as established.

Zoning ordinances, construed in the decisions from other jurisdictions, are all very much the same and similar to that under consideration here. In practically all of them provision is made for a board with power on appeal to authorize, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and where the spirit of the ordinance shall be observed and substantial justice done. Such ordinances have been very generally sustained upon the theory that they constitute a valid exercise of the police power; that is to say, they have a substantial bearing upon the public health, safety, morals and general welfare of a community. (*Coppage* v. *Kansas,* 236 U. S. 1, 35 Sup. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960; *Nectow* v. *Cambridge,* supra; *St. Basil's Church of City of Utica* v. *Kerner,* 125 Misc. 526, 211 N. Y. Supp. 470, 477; *King Mfg. Co.* v. *City Council of Augusta,* 277 U. S. 100, 48 Sup. Ct. 489, 72 L. Ed. 801; *Village of Euclid* v. *Ambler Realty Co.,* supra.)

Chapter 136, Laws of 1929, is the source of the police power of the city to enact its zoning ordinance. Such police power is in the state, but it may be delegated to a municipality. (*State ex rel. City of Miles City* v. *Northern Pacific Ry. Co.,* 88 Mont. 529, 295 Pac. 257.)

Appellant contends that the board of adjustment did not have the power to authorize the issuance of the permit to Clark. In this connection it is suggested that the variation

which the board has the power to make refers only to slight variations, such as the height of a building, or the distance it must be from the street, etc. We find little merit in this contention. Obviously, the legislature could not fix any definite rule that would fit every individual case of alleged hardship. The authority conferred upon the board was, of necessity, of a general nature and discretionary. The language used in the provision of the statute and of the ordinance is broad and general. It confers upon the board considerable latitude for the exercise of its discretion in any particular case.

In the case of *L. & M. Inv. Co.* v. *Cutler,* 125 Ohio St. 12, 180 N. E. 379, 383, 86 A. L. R. 707, the court said: "Plaintiff in error contends that no definite standard was fixed in the ordinance for determining what are the 'practical difficulties' or 'unnecessary hardships' resulting to the owner of the property who desired to be relieved from the strict letter of the ordinance. * * * Manifestly the legislative body cannot fix any adequate standard or rule that would fit every individual case of hardship. That is impossible; and therefore the legislative body has confined the determination of that feature to an administrative agency—in this case the board of appeals—as a fact-finding body which could determine whether in any specific case unusual hardships might result if the strict letter of the ordinance were complied with."

So we observe here, the board of adjustment is an administrative agency vested with a general power to act as a fact-finding body, and to determine "whether in any specific case unusual hardships might result if the strict letter of the ordinance were complied with." To restrict the powers of the board in the manner suggested by appellant would in effect limit it to the consideration of trivial matters only, and leave no substantial reason for its existence.

There are numerous cases sustaining the right of a legislature to provide for the creation of a board of adjustment, or similar fact-finding body. (*Nectow* v. *Cambridge,* supra; *St. Basil's Church of City of Utica* v. *Kerner,* supra; *Bradley* v. *Board of*

*Zoning Adjustment,* 255 Mass. 160, 150 N. E. 892, 896; *Dowsey* v. *Village of Kensington,* 257 N. Y. 221, 177 N. E. 427, 86 A. L. R. 642.) It is a well-recognized principle that the powers thus conferred upon such a board are essentially of a broad and unrestricted nature. (*St. Basil's Church of City of Utica* v. *Kerner,* supra; *Bradley* v. *Board of Zoning Adjustment,* supra; *People* v. *Board of Appeals,* 234 N. Y. 484, 138 N. E. 416; *Village of Euclid* v. *Ambler Realty Co.,* supra; *King Mfg. Co.* v. *City Council of Augusta,* supra.) It is equally well settled that the conferring of such powers upon a board does not amount to an unlawful delegation of legislative authority. (*Bradley* v. *Board of Zoning Adjustment,* supra; *McCord* v. *Ed Bond & Condon Co.,* 175 Ga. 667, 165 S. E. 590, 86 A. L. R. 703; *R. B. Construction Co.* v. *Jackson,* 152 Md. 671, 137 Atl. 278; *In re Dawson,* 136 Okl. 113, 277 Pac. 226.)

In *Bradley* v. *Board of Zoning Adjustment,* supra, it was said: "In earlier days, the argument that the powers conferred upon the board amounted to an unlawful delegation of legislative authority would have demanded serious consideration. In the light of a group of comparatively recent decisions, where that subject has been discussed fully, there can no longer be serious doubt that in this particular the statute does not offend any provision of the Constitution. This is true even though the board is given power to change on the terms stated in the statute the boundaries of the several districts or zones established by the Legislature itself."

There is force in the argument advanced by respondents that the creation and existence of such a board is essential to the constitutionality of the law and the ordinance. The language of the New York court is pertinent on this point. In the case of *St. Basil's Church of City of Utica* v. *Kerner,* supra, the subject was discussed in the following language: "The creation of a board of appeals, with discretionary powers to meet specific cases of hardship or specific instances of improper classification, is not to destroy zoning as a policy, but to save it. The property of citizens cannot and ought not to be placed within a strait-jacket. Not only may there be

grievous injury caused by the immediate act of zoning, but time itself works changes which require adjustment. What might be reasonable to-day might not be reasonable to-morrow. If in any zoning ordinance there is not created a board of appeals, with the broad powers provided in the statute and in this zoning ordinance, and under which serious injuries to private rights occasioned by reason of peculiar conditions or improper zoning can be avoided, the courts, bound by the duty to protect individuals from invasion of their constitutional rights, would develop a line of decisions which, by reason of their number and character, might eventually destroy the policy of zoning itself." (See, also, *Nectow* v. *Cambridge,* supra; *King Mfg. Co.* v. *City Council of Augusta,* supra; *People* v. *Board of Appeals,* supra.)

Zoning ordinances must have a real and substantial bearing upon the public health, safety, morals and general welfare of a community. They must find their justification in some aspect of the police power asserted for the public welfare. (*Dowsey* v. *Village of Kensington,* 257 N. Y. 221, 177 N. E. 427, 86 A. L. R. 642; *State of Washington ex rel. Seattle Title Trust Co.* v. *Roberge,* 278 U. S. 116, 49 Sup. Ct. 50, 73 L. Ed. 210, 86 A. L. R. 654.) Ordinances not so designed are at variance with the fundamental nature of private ownership and in violation of constitutional prohibitions. (*Coppage* v. *Kansas,* 236 U. S. 1, 35 Sup. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960; *Truax* v. *Corrigan,* 257 U. S. 312, 42 Sup. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; *Women's etc. Society* v. *Kansas City,* (C. C. A., Mo.) 58 Fed. (2d) 593.)

Under the guise of protecting the public or advancing its interest, the state may not unduly interfere with private business or prohibit lawful occupations, or impose unreasonable or unnecessary restrictions upon them. Any law or regulation which imposes unjust limitations upon the full use and enjoyment of property, or destroys property value or use, deprives the owner of property rights. (*State* v. *Gateway Mortuaries, Inc.,* 87 Mont. 225, 287 Pac. 156, 68 A. L. R. 1512; *Bettey* v. *City of Sidney,* 79 Mont. 314, 257 Pac. 1007, 56 A. L. R. 872.)

A business is a property right, and as such is entitled to the protection of both the state and federal Constitutions. (*State v. Gateway Mortuaries, Inc.*, supra; *Liggett Co. v. Baldridge*, 278 U. S. 105, 49 Sup. Ct. 57, 73 L. Ed. 204.)

It is therefore apparent that the provision for a board of adjustment (or similar fact-finding body), vested with broad general powers, is important to the validity of the zoning ordinance and the statute under which it was enacted. In the absence of such a board vested with power to prevent the inequalities and injustices which might otherwise result from a strict enforcement of the zoning ordinance, there would be grave doubts as to the constitutionality of the ordinance and the statute under which it was enacted. (*St. Basil's Church of City of Utica v. Kerner*, supra.) In that event this ordinance would probably come within the meaning of the prohibition expressed in *State v. Gateway Mortuaries, Inc.*, supra.

Police power embraces a regulation designed to promote the public convenience and the peace and good order of society. (*State v. Loomis*, 75 Mont. 88, 242 Pac. 344.) The ordinance in question here can be justified only as an exercise of state-vested police power which has been legally delegated to the city of Great Falls. In order for such ordinance to comply with the requirements essential to the exercise of police power in the particular mentioned, it was essential that there should be an appellate body, such as the board of adjustment, with the power to consider exceptional cases. The board found that this was an exceptional case.

It follows that Chapter 136, Laws of 1929, is constitutional, and that the Great Falls ordinance enacted under the authority of that Act constitutes a legal grant of power. It remains only to be determined whether the facts and circumstances presented to the board, and later reviewed by the district court, were sufficient to sustain the order of the board.

It is not necessary to enter upon a detailed discussion of the evidence. We have carefully reviewed it as it is set out in the record, and are satisfied that there is competent

and substantial evidence to sustain the action of the court. As we have already indicated, the board is vested with a broad discretion. It exercised that discretion in accordance with statute and ordinance. Unless its decision constituted an abuse of discretion, the court should not interfere with it.

It appearing that the board is vested with discretionary power within the limits defined in the law and the ordinance, and that there was substantial evidence to move that discretion, we come to the well-established principle uniformly recognized in Montana—that a court will not substitute a judicial discretion for the discretion of an officer, board or body acting within the scope of his or its exclusive authority. This court has decided the matter so many times that it is axiomatic. A recent discussion of the proposition, with citation of cases, is contained in the opinion in *Fulmer* v. *Board of Railroad Commrs.*, 96 Mont. 22, 28 Pac. (2d) 849, 853, wherein it is said: "Neither litigants nor citizens can complain because an officer or a board exercises a discretion specifically granted through legislative authority."

The district court did not abuse its discretion in affirming the order of the board. The judgment of the district court is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.