CITY OF DETROIT v. DETROIT UNITED RAILWAY.

1. STATUTES—CONSTRUCTION—RULE.

While a statute, remedial in its nature, should be liberally construed for the advancement of the remedy, such rule does not warrant a disregard of its terms or a judicial determination of what should have been the legislative conception in passing it.

2. MUNICIPAL CORPORATIONS — RAILROADS — HIGHWAYS AND STREETS—SEPARATION OF GRADES—DAMAGES.

In a proceeding under the statute (chapter 102, 2 Comp. Laws), to separate the grade of a street and that of several railroads, by a single improvement, which required the grade of the street to be lowered and the grade of the railroads to be elevated, the city having appealed from an order confirming certain awards made by a jury, it is *held:*

(a) Interested property owners may not profit out of the change, and compensation for damages may not be awarded upon any theory of punishing the municipality.

(b) Compensation may not be awarded for damages caused by the elevation of the railroad tracks.

(c) Compensation is to be awarded for damages to property abutting upon the portion of the street where the grade is changed and for such damages only as result from—are caused by—the change of the grade of the street.

(d) The just compensation to which the owner of property abutting the street is entitled is the difference in the value of the property (if any) before the change of grade and its value after the change of grade. The provision

in the statute for an assessment for special benefits to property within a district to be created does not preclude the application of this rule.

(e) Damages to a business, as such, whether carried on by the owner of the abutting property or by his tenant, may not be recovered.

(f) The damages to the interest of a tenant of abutting property are not necessarily measured, in all cases, by the value of the term less the rent reserved.

(g) Rendering the street in its changed condition less convenient for use and closing the street in whole or in part to public travel during the progress of the work, are not matters supporting a claim for damages.

3. SAME—DAMAGES—EVIDENCE.

In such proceedings it was not error to exclude testimony of the effect of other separation of grades upon the property in the immediate vicinity of changes, nor to exclude evidence that on other streets where such improvements had been completed, the slope or inclination of the street exceeded that of the street in question.

4. SAME—DAMAGES—BURDEN OF PROOF—INSTRUCTIONS.

It was error to instruct the jury that "the onus of any uncertainty that exists here is upon the petitioner. This is not an action upon contract, but is more in the nature of an action of tort, wherein these respondents had no chance to agree or disagree with the proposed improvement, but were entirely innocent parties; and, if anybody has to suffer by reason of the necessary uncertainty of the testimony, it ought in all justice to be the active, moving party, the petitioner, and not the innocent, passive parties, the respondents." Testimony too uncertain in its nature to establish the right to compensation under the provisions of the statute may not be made certain by assuming that upon the municipality rests any responsibility for such uncertainty.

5. SAME—AGREEMENTS—EFFECT—WAIVER—INSTRUCTIONS.

Prior to instituting the proceeding, the city, certain railroads, and a street railway entered into an agreement in which, among other things, it was agreed by said street railway that it waived "any and all claim for damages by reason of the change of grade of any of said streets to any abutting property owned or controlled" by it, and it is held, construing the agreement, that it applied to all property of said street railway whether used by it in the operation of its road or not.

Error to the recorder's court of Detroit; Connolly, J. Submitted May 6, 1908. (Docket No. 99.) Reargued

February 8, 1909. (Docket No. 56.) Decided March 30, 1909.

Petition by the city of Detroit for the separation of grades in a certain street. The Detroit United Railway and others intervened, claiming damages. There was judgment confirming the award of the jury, and petitioner brings error. Reversed.

*P. J. M. Hally* ( *Timothy E. Tarsney*, of counsel), for appellant.

*Brennan, Donnelly & Van De Mark*, for appellee Detroit United Railway.

*Arthur C. O'Connor*, for appellee Croul.

*Frank D. Andrus*, for appellee Lindsay.

*Thomas L. Dalton* and *Charles E. Love*, for appellee McNutt.

*Corliss, Leete & Joslyn*, for appellee Penberthy Injector Co.

*Edmund Atkinson* ( *Chamberlain, May, Denby & Webster, Beaumont, Smith & Harris*, and *Choate & Webster*, of counsel), for appellees Snyder and Union Transfer & Storage Co.

OSTRANDER, J. In conformity with an act entitled: "An act to provide separate grades for railroads and public highways and streets where railroads intersect such highways and streets" (2 Comp. Laws, §§ 4229–4261), an agreement was made between the city of Detroit, party of the first part, and three steam railroad companies and the Detroit United Railway, described as parties of the second part, for a separation of grades at various points in said city, for paying the cost of making and maintaining such separation of grades, and for a division of the total expense thereof between the parties thereto. Thereafter proceedings were instituted in the recorder's

court for said city for a separation of grades at Greenwood avenue, with the result that the necessity for such improvement was found, and the awards made by a jury were confirmed. The city, a motion for a new trial having been denied, appeals from the determination in so far as it affects (1) the Detroit United Railway; (2) the Penberthy Injector Company; (3) William R. Croul; (4) David Lindsay; (5) Martin G. McNutt. Of these the first two are owners of property abutting upon the said avenue; the others are tenants occupying, for business purposes, property so abutting. The land of the Penberthy Injector Company adjoins the right of way of a railroad company, and a portion of it is used by the owner for manufacturing purposes. The agreement referred to, after reciting the desire on the part of the city to discontinue, as it may be reasonably practicable to do so, grade crossings at the intersection of the several streets in the district between Woodward and Michigan avenues (and at streets hereafter to be laid out and opened), with the rights of way of the said railroad companies, and to substitute therefor overhead crossings by said railroads at such intersections, and after further reciting that a uniform profile fixing the level to which the railroad tracks shall be raised has been agreed upon, and an agreement reached concerning the method, the terms, conditions, and general specifications for effecting changes at such crossings and particular plans and specifications as to certain named crossings, contains, among many others, the following provisions:

"Now, therefore, in consideration of the premises and the mutual undertakings of the parties hereinafter expressed, it is agreed: * * *

"(2) That the city * * * shall, and hereby does, assume the payment of all abuttal damages, if any there be, to property of persons other than the parties of the second part, arising in any way from said change in the grade of any of such streets, and all cost, expense, charges, or liability in any proceedings which may be instituted to effect such separation of grades, or which may be insti-

tuted to prevent the performance of this agreement, * * * and the parties of the second part hereby waive any and all claim for damage by reason of the change of grade of any of said streets to any abutting property owned or controlled by them, or any of them.

" (3)    *    *    *    The said second parties, and each of them, shall release all damages, charges, or claim arising from loss of traffic or otherwise, occasioned by said changes of grade."

Greenwood avenue is within the district lying between Woodward and Michigan avenues. It was deemed by the city inexpedient to attempt settlement or compromise with property owners, for which reason the intervention of a jury became necessary.

The particular improvement, which was in fact a single one, required the elevation of tracks of three railroad companies and a considerable change—lowering—of the grade and level of the street. The elevation of the tracks made it necessary to remove, and afterwards relay, a spur track which accommodated the Penberthy Injector Company. Interruption of business and resulting private loss was occasioned by interference with public travel on the street while the work was in progress. The principal question presented is the one of the statute meaning of the phrase "the amount of damages to such property as may be damaged thereby," this being what the jury is required to ascertain and determine; compensation for "such damages" being what is to be awarded "to the parties interested." 2 Comp. Laws, § 4244. Included in this is the question whether compensation must be made for any damages caused by the change of the grade of the railroad right of way—by the elevation of the tracks.

Counsel entertain widely differing opinions about the scope and effect of this legislation, for which they find reasons, in the meaning they give to the words, in the general purpose of the law and in the previous state of the law. As would be expected, these opinions favor on the one hand a liberal construction of what is denominated a "remedial statute," on the other hand a construc-

tion which will not expand or enlarge the meaning which the words employed will bear. Without setting out the arguments, by which we have profited, we state the conclusions we have reached and the reasons therefor. This is a remedial statute, in essence a declaration of the right of the individual to compensation for damages sustained by him for the public benefit. A rule often stated is that a remedial statute should be construed liberally for the advancement of the remedy; but neither this rule nor the one of strict construction is a warrant for disregarding the language of a statute, or for amending the law to conform to a judicial conception of what should have been the legislative conception in passing it. We have other statutes which provide for compensation when the grade of a street or of a sidewalk is changed. By 1 Comp. Laws, § 2784, compensation to the owner for all damages to such (adjacent) property, resulting therefrom is required. See, also, 1 Comp. Laws, § 3179. The remedy afforded by these statutes, and by the one we are considering, is made effective when the designated person or class secures compensation reckoned according to the legislative formula. No person of the statute class should be denied the compensation which the statute provides for. If the legislative designation of the class is uncertain, or if the formula for reckoning compensation is uncertain, or is incomplete, the courts may then perhaps advance the general legislative purpose by construction.

The statute now considered points out the class entitled to compensation. It denies compensation for damages unless they result from the change of the grade of the street. A noticeable provision of the statute is the one which requires that an accurate profile and map be made of the portions of the street and of the railroads the grades of which are to be changed, and a detail plan of the improvement itself, as well when the improvement is made by agreement as when it is made at the instance of the railroad and street-crossing board. It is the necessity for the improvement so proposed and planned which the jury

determines. It must be assumed that the changes of grade, as well in the railroad right of way as in the streets, indicated by the plan of the improvement, are made in the public interest; that if demanded by public necessity they may be compelled. These considerations and the words of section 4244 seem at first to support a construction of the act which will afford compensation as well for damages caused by the elevation of tracks as for those resulting from a change of grade of the street. The record discloses the fact, which would in any event be inferred, that not only at the points of intersection with streets, but at all points the tracks must be elevated. If we reject the words of the statute, found in various sections thereof, which specifically limit the interested class to those having "an interest in any lands abutting on that portion of the street or highway within the city of which the grade is to be changed according to the said agreement," these being the persons with whom compromises may be made, being also the only persons who are necessary parties to the petition, it is clear that we greatly enlarge the class of persons whose interests must be respected. Excepting the repeated use of the words "abutting owners" and "abutting property" and "such property as may be damaged thereby," or words of equivalent meaning, the statute does not describe either the property to be considered or the owners thereof otherwise than in, or by reference to, the terms "abutting on that part [or portion] of the street or highway of which the grade is to be changed." It is reasonable to say that the words "owners" and "property damaged thereby" are used with reference to such property; that when "abutting property" is spoken of, it means property abutting upon the street, and with such meanings the various provisions are consistent with each other. Otherwise they are inconsistent. We have not lost sight of the fact that a highway or street may be carried over, as well as under, railroad tracks for the purpose of a separation of grades. In such a case it is conceivable that the abutting property, or some of it, would be

rendered wholly worthless for uses to which it had been previously devoted, if not worthless for any purpose.  Much would depend, of course, upon the character of the structure. If such a structure was erected without legislative authority, it would seem that the rule of *City of Pontiac* v. *Carter*, 32 Mich. 164, would not be controlling of the right of abutting owners to damages.  *Schneider* v. *City of Detroit*, 72 Mich. 240 (2 L. R. A. 54); *Phelps* v. *City of Detroit*, 120 Mich. 447.  See *Ranson* v. *City of Sault Ste. Marie*, 143 Mich. 661 (15 L. R. A. [N. S.] 49); *Vanderlip* v. *City of Grand Rapids*, 73 Mich. 522 (3 L. R. A. 247).  Considering all of the provisions of the statute together, we conclude that it does not permit an award for any damages resulting from the elevation of the tracks. Compensation must be given only for damages to property abutting upon that portion of the street the grade of which is to be changed, and for such damages only as result from—are caused by—such change of grade.  Those interested, as owners or otherwise, in such abutting property are the persons making up the class entitled, upon proper showing, to compensation.  These views were not adopted by the recorder.

Abutting property, none of which is taken, is not damaged, within the meaning of this statute, which is worth no less after the improvement is made than it was worth before it was made.

"If the fair market value of the property is as much immediately after the construction of the improvement as it was before the improvement was made, no damage has been sustained, and no recovery can be had."  *Springer* v. *City of Chicago*, 135 Ill. 552 (12 L. R. A. 609, 615).

"The instruction refused and those given are based upon the theory that the cost of putting the property in as good condition as it was before the change of grade, less resulting benefits, is the measure of damages.  Such, we think, is not the best and plainest statement of the true measure of recovery.  The right to recover is derived from the statute alone (Code, § 469), and is not based upon alleged wrong, as in the cases cited by the appellant.

The evident purpose of the statute is to make the property owner whole, and no more. The difference in the value of his property as it was just before the change of grade, and as it was just after, as affected by the change, is the exact amount to which he has been damaged. If, because of benefits resulting to the property from the change, it is rendered as valuable, or more so, than before, there is no damage; but, if less valuable, there is, to the extent of the difference. Resulting benefits are considered in these cases. *McCash* v. *City of Burlington*, 72 Iowa, 26. It is true that the reasonable cost of putting the property in the same condition in which it was before the change, less resulting benefits, will lead to the same result as the rule we have stated; but there are several reasons why that is not the plainest and best statement of the measure of damages. It does not plainly and directly present to the minds of a jury the ultimate fact to be arrived at, and generally, if not uniformly, the property has not or cannot be put in the exact condition that it was before the change; as, in this case, a sum is expended in refitting the property to the new grade, and in doing so it has new material and new walls instead of the old. It is not refitted to be the same as before, and the jury must go through confusing investigations of the value of the new material and betterments over the old. Evidence as to the reasonable cost of putting the property in the same condition that it was in before the change is admissible, and proper to be considered, as it is one means of arriving at the difference in value as caused by the change. Another means is the opinion of competent witnesses as to the value of the property before and after. The ultimate fact to be arrived at is the difference in the value of the property as caused by the change of grade. This should be given to the jury as the measure of damages. This measure is alike applicable whether the property has been refitted to the new grade or not. See *Meyer* v. *City of Burlington*, 52 Iowa, 560." *Stewart* v. *City of Council Bluffs*, 84 Iowa, 61.

We approve of the rule thus stated by the supreme court of Iowa. See, also, *Chase* v. *City of Portland*, 86 Me. 367; *Com.* v. *Sessions of Norfolk*, 5 Mass. 435; *Buell* v. *County of Worcester*, 119 Mass. 372; *Chambers* v. *South Chester*, 140 Pa. 510; *Philadelphia Ball*

*Club* v. *City of Philadelphia,* 192 Pa. 632 (46 L. R. A. 724); *Parker* v. *City of Atchison,* 46 Kan. 14; *Swift & Co.* v. *City of Newport News,* 105 Va. 108 (3 L. R. A. [N. S.] 404); *City of Covington* v. *Taffee,* 24 Ky. Law Rep. 373; *City Council of Augusta* v. *Schrameck,* 96 Ga. 426; *City Council of Montgomery* v. *Maddox,* 89 Ala. 181; 28 Cyc. p. 1069 et seq. There are portions of the charge to the jury which seem to be in accord with this rule. We cannot say that it was the rule announced in view of the fact that the recorder was of the opinion, and so stated, that, because the statute contained a provision for an assessment for special benefits upon property in the vicinity of the improvement, the jury could take no account of any peculiar or particular private benefits resulting from the improvement. If, after the street is graded, the abutting property is worth as much, in the condition in which the new grade leaves it, as it was worth before the change was made, it is not damaged by the change of grade. The fact that, if it is damaged, an assessment to pay the damages may be, later on, made upon property in the neighborhood, in accordance with some notion of special benefits, does not seem to be a reason for refusing to apply the rule announced. Nothing is to be considered but the effect of the change—the structural change—in the street, upon the particular property. This rule applies as well to the interests of tenants as to those of owners. We do not consider, although we are asked to do so, whether the agreement entered into by the city, herein referred to, precludes a special assessment upon property found to have been specially benefited by the improvement. The question is not, necessarily, involved.

What is just compensation within the meaning of the statute? It is not easy, perhaps is impossible, to lay down any but broad, general rules. Section 4231 provides for a compromise by the municipality with "any person having an interest in any lands abutting on that portion of the street or highway within the city of which the grade

is to be changed according to the said agreement, and which may be damaged by the proposed change of grade." If the separation of grades is ordered by the board of railroad and street crossings, or takes place pursuant to an agreement, and no such compromise is made, in either case the petition which is required to be filed (section 4239) must contain a description of "the property abutting on that part of said street or highway of which the grade is to be changed, also a statement of the manner in which said property * * * will be affected by said change," and shall further state that it is made and filed "for the purpose * * * and for making just compensation to all persons sustaining damage thereby." The jury is impaneled (section 4241) "to ascertain and determine the just compensation to be made therefor" to "persons interested in the abutting property made parties respondent to said petition. * * *" The jury (section 4243) is sworn to "impartially ascertain and determine the compensation to be made to the parties respondent and unknown parties in interest named in said petition," and in the verdict (section 4244) shall ascertain and determine the amount of damages to such property as may be damaged thereby, and award to the parties interested compensation for such damages. These provisions are broad enough to secure to persons interested in the abutting property indemnity for such damages to the property, and to their respective interests therein, as result from the change of the grade of the street. It is obvious that not all injuries resulting from the making of the improvement are within this rule. Inconvenience caused to the general public and to the claimant, temporarily or permanently, on account of rendering the street less convenient for use; injury and inconvenience resulting from closing the street, in whole or in part, to public travel during the progress of the work—do not, except in degree, affect those within the district differently than it does those outside of it. They do not support a claim for damages. The fact that the legislature has confined the inquiry to the property

within the limited territory affected by the change of the grade of the street, and to those damages resulting from such change of the grade, is a sufficient reason for concluding that the provisions above referred to are not broad enough to secure damages to a business, as such, carried on upon the land, whether by the owner of the land or by a tenant.

In the contemplation of the statute compensation is to be awarded, in gross, before the improvement is begun, and to be apportioned among those interested in the land. It would be mere speculation to attempt to determine the loss of profits of a business to be continued on the premises, to be occasioned by a change of grade to be made. The fact that in the present case the improvement was completed before this proceeding was instituted, and the fact, if it is a fact, that certain profits claimed to have been lost can now be certainly proven, do not aid us in arriving at the statute measure of compensation. As has been said, the statute contemplates an award before the improvement is made. Where the right to use premises attaches to the interest of the claimant in such premises, and it is apparent that such use will be wholly and permanently lost, or will be abridged, as a result of the effect of the change of grade upon the premises, the fixing of just compensation may involve some inquiry into the nature of the use and the effect of its loss or abridgment. We have heretofore held (*City of Detroit* v. *C. H. Little Co.*, 146 Mich. 373) that just compensation to a tenant evicted by the change of grade is not necessarily the value of his term less the rent reserved. That rule might, and it might not, afford indemnity. In a majority of cases it undoubtedly would afford just compensation, and any mere abridgment of the value of the tenant's interest in the property will usually be recompensed in the application of the rule. We do not intimate that the nature of the title upon which interest is grounded, the duration of a tenant's term, and the right of the landlord, by notice or by statutory proceedings, to determine

the term, and so the interest in the premises, is not to be considered by the jury in arriving at a proper award. But if the effect of the change would be to cause a removal from the premises which would not otherwise be made, just compensation may require payment of the cost of such removal, and, perhaps (the point is not involved on this appeal), payment for the loss of net earnings of a business for a reasonable period necessary to removal. It is not to be supposed that any interested person will profit out of the transaction, or that compensation will be awarded with any notion of punishing the municipality. In his charge the recorder laid down rules more liberal to respondents than those we have stated.

We cannot say that it was error to exclude testimony of the effect of other separations of grades upon the property in the immediate vicinity of those changes, or to exclude evidence of the fact that on other streets in the city the slope or inclination of the street exceeded that upon the street in question after the improvement was completed. There are many circumstances and conditions affecting particular localities in cities. A comparison of existing and known conditions invites innumerable issues. The number of such issues will not be diminished in any attempt to prove that the same results will follow the same improvements in different localities.

The recorder said to the jury:

"The onus of any uncertainty that exists here is upon the petitioner. This is not an action upon contract, but it is more in the nature of an action of tort, wherein these respondents had no chance to agree or disagree with the proposed improvement, but were entirely innocent parties; and, if anybody has to suffer by reason of the necessary uncertainty of the testimony, it ought in all justice to be the active, moving party, the petitioner, and not the innocent, passive parties, the respondents."

In this we think he was in error. Testimony too uncertain in its nature to establish a right to compensation under the provisions of this statute may not be made cer-

tain by indulging the idea that upon the city rests any responsibility for such uncertainty.

Some other questions are argued in the briefs. None of them are related to the facts involved in the particular appeals. The views we have expressed require a reversal of the order of the court below as to all of the appellees except the Detroit United Railway.

Respondent Lindsay is sublessee of the Goebel Brewing Company, lessee of Charles A. Kandt, who owns two lots affected by the improvement. The owner valued his property at $7,500 before the work of improvement was begun. Goebel Brewing Company had a written lease of a building on the property, expiring in 1908, the rent reserved being $55 a month. Lindsay, who occupies the building with a grocery and saloon, under a parol lease from the brewing company, paid $55 a month to that company. The jury awarded the owner $4,400, the Brewing Company $700, and Mr. Lindsay $1,500, a total of $6,600. The awards to the owner and to the brewing company are not involved in this appeal. The award to Mr. Lindsay is based wholly upon testimony tending to prove loss of profits and deflection of his trade, occasioned by inconvenience of access to his store and interference, generally, with travel upon the street and upon the railroad property adjoining his property. The same is true of respondents Croul and McNutt. They are tenants from month to month. We award a new trial to each of these respondents, assuming that they may regard themselves entitled to some damages under proper rules.

As to respondent Detroit United Railway, the question is one of interpretation of the agreement, the initial act in the proceeding, to which agreement it was a party. It is a provision of the agreement that the city assumes the payment of all abuttal damages to property of persons other than the parties of the second part, arising in any way from said change of grade and all cost, expense, charges, or liability in any proceedings which may be instituted to effect or to prevent the contemplated changes

of grade, "and the parties of the second part hereby waive any and all claim for damage by reason of the change of grade of any of said streets to any abutting property owned or controlled by them, or any of them." That the waiver is intended to apply only in such cases and on such streets as respondent uses in operating its road at the point of intersection with the steam railroad ways, is the claim made for respondent. The recorder instructed the jury:

"That the waiver claimed by the city in the agreement existing between the city and the Detroit United Railway does not cover the property in question in the contemplation of the statute, which was the basis of the agreement made between the city and the Detroit United Railway."

The statute, as we have seen, contemplates the payment of damages to street railway companies for interference with tracks. It places no part of the original burden of cost of separation of grades upon them, and the respondent is a voluntary party to the agreement which was made. It is admitted that in some of the streets affected by the agreement the street railway has no interest; in others it is interested as owner of abutting property, or of a railway in operation, or both as owner of abutting property and of a railway. The agreement in general terms imposes upon "the parties of the second part" responsibilities and liabilities which it is clear are to be borne by the railroad companies alone. If the agreement did not also, in other portions of it, deal specifically with the liabilities assumed by each of the parties of the second part, there would be more force to the argument made for respondent. But it does in detail specify the things which each party of the second part agrees to do. It does not, however, in terms, modify or enlarge the liability assumed on the part of the city to pay "all abuttal damages to property of persons other than the parties of the second part." There is no modification of the waiver above recited. There is the further distinct waiver that "the said second parties, and each of them, shall re-

lease all damages, charges, or claim arising from loss of traffic, or otherwise, occasioned by said changes of grade." The mutual promises and obligations of each of the parties stand opposed, in their entirety, to those of each of the other parties to the agreement, and the agreement is fairly susceptible of but one interpretation, which is that respondent waived its right to the damages awarded to it by the jury. The award should not have been confirmed, and the order of confirmation is reversed. There is, however, no occasion for a new trial of this issue.

We award costs of this appeal against the appellees, jointly and severally, to the appellant city.

BLAIR, C. J., and GRANT, MONTGOMERY, MOORE, McALVAY, and BROOKE, JJ., concurred. HOOKER, J., on account of illness, took no part in the decision.