CITY OF CLEVELAND *v.* THE GENERAL STORAGE CO.

(Decided January 16, 1928.)

*Mr. Alfred Clum,* for plaintiff in error.
*Messrs. White, Cannon & Spieth,* for defendant in error.

SULLIVAN, P. J.   This is a proceeding in error from the court of common pleas of Cuyahoga county, and the action is one in injunction, commenced by the General Storage Company against the city of Cleveland, to restrain the municipality from proceeding with a hearing in the insolvency court of Cuyahoga county, begun by the city for the purpose of appropriating certain property of the storage company under authority of an ordinance known as No. 71471, passed October 19, 1925, designated as an emergency ordinance, the language of which is as follows:

"An emergency ordinance to appropriate all street rights, property and easements appurtenant to the land hereinafter described in the old Superior street viaduct for the purpose of *enabling* the city of Cleveland to remove that portion of the old Superior street viaduct which extends from West Ninth street to a point near the easterly bank of the Cuyahoga river.

"Whereas, the acquiring of the property, *street rights and easements* contemplated in this ordinance constitutes an emergency, in that it provides for the immediate preservation of the public property, and to provide for the daily operation of a municipal department of the city of Cleveland:

"Now, therefore, be it ordained by the council of the city of Cleveland:

"Section 1. That for the purpose of *enabling* the city of Cleveland to remove all that portion of the old Superior street viaduct which extends from West Ninth street to a point near the easterly bank of the Cuyahoga river, there be and is hereby appropriated for public use, *all street rights, property and easements in said old Superior street viaduct which* may be appurtenant to the following described premises: [Description of property.]

"Section 2. That the director of law be and he is hereby authorized and directed to apply to a court of competent jurisdiction to have a jury impaneled to make inquiry into and assess the compensation to be paid for such street rights, property and easements in said old Superior street viaduct hereby appropriated.

"Section 3. This ordinance is hereby declared to

be an emergency measure and shall take effect and be in force from and after its passage.

"Passed October 19, 1925. John D. Marshall, President of the Council. F. W. Thomas, Clerk of Council."

A demurrer was filed in the court below to the petition, and the same being overruled the city pleaded by way of answer, and thereupon a demurrer was filed to the answer, and, upon hearing, it was sustained, on the ground that there were no allegations that in law warranted the proceedings to take and appropriate, begun and pending in the insolvency court, under said resolution.

There being no further pleading by way of amended answer or otherwise, a decree was entered, perpetually enjoining any further proceedings in the insolvency court, and hence these proceedings in error by the municipality.

It is admitted by the city that the primary purpose of the passage of the ordinance is to change the grade of the street immediately contiguous to the property of the storage company, and unless the ordinance, and the proceedings thereunder, in legal effect, if not by express provision, have that purpose in view, then it follows, even according to the contention of able counsel for the city of Cleveland, that the decree of the court below was well founded in law.

The business of the plaintiff below, the General Storage Company, is located in the sixth story of a building which is contiguous to what is known as the old Superior viaduct, which crosses the Cuyahoga river, connecting the east and west side of the city of Cleveland. It has heretofore been held, in

previous litigation between these parties, by this court, that this bridge was a highway and public street. Egress and ingress to the place of business of the plaintiff below were from the east approach, or portion, of this bridge or viaduct.

Some years ago the United States government caused the removal of what is known as the "turn-bridge" of the structure, which left, after its removal, this portion of the bridge known as the east approach, and by means of this approach the customers reach and depart from the place of business of the storage company, as heretofore mentioned.

Therefore the question arises whether, under the ordinance, and under the claim that a change of grade is necessary, this east portion of the old viaduct, which this court has denominated by its former decree a street and highway, may be removed for any reason at bar except to change the grade of the street under statutory provisions.

From an examination of the ordinance it is clear that, without any additional information, the only purpose of its passage ascertainable from its terms is to enable the city to remove that portion of the street, otherwise known as the viaduct, which extends from West Ninth street to a point near the easterly bank of Cuyahoga river. Therefore any property owner affected by the passage of the ordinance is denied, by the provisions of the ordinance itself, any information or knowledge of any intent or purpose on the part of the city of Cleveland to change the grade of the street, whether the street be the dirt road which is under the roadway of the bridge, as it was traveled while in existence, or be the highway known as the Superior viaduct, of which

the east portion remaining is now the portion which forms the approach to the property and place of business of the storage company, although, in the absence of any knowledge to the contrary, the claim of change of grade, in our judgment, could only refer to the change of grade of what is known as the public highway, a street formed by the structure itself, because, even under the claim of the city, the proposed change of grade could not be applied to the road under the bridge, for the reason that the bridge became a highway connecting the east side with the west side of the city, and instead of being subordinate to the surface roadway it only existed because of the construction of the highway known in other language as the Superior viaduct.

The language of the ordinance is specific as to its purpose. There is no other deduction, excepting that its object is to enable the city to remove the remaining portion of the old viaduct, and to do so it seeks to appropriate whatever rights the storage company may have as to ingress and egress to and from its place of business.

Were the language ambiguous instead of definite and certain, there might arise a necessity for interpreting it and determining whether, in legal effect, the purpose was to change the grade. But no such status exists. The language is absolutely unrelated to and unconnected with any other purpose except that which is specifically incorporated on every occasion found necessary in the ordinance. There is no language which needs construction. There is no situation in the provisions of the ordinance that creates a foundation for construction or interpretation, because the provisions are unambiguous, defi-

nite, certain, and specific, and therefore the language interprets or construes itself.

If there were language in the ordinance that purported, either directly or indirectly, to indicate that the purpose of its passage was to change the grade of the street, then the court might analyze and examine the provisions for the purpose of ascertaining whether the legal effect of the purport was to change the grade, but there is no such language. It is so specific that it admits of no deviation, and runs especially to a conclusion that in character is in no manner akin or related to the purpose irrevocably designated in the language of the ordinance. Where language does not express its purpose, courts can construe its legal effect. Language which is doubtful in meaning may expose its purpose, and its effect may be obtained, but there can be no legal effect given to language unless the effect itself is equivalent to the purpose, the intent, and the employment of the language itself. That, we think, is a principle of logic from which we cannot escape. Therefore to determine the legal effect of the language to be that the purpose of council was to change the grade is impossible by virtue of the employment of any of the principles of logic or of law.

Hence it is our conclusion that the ordinance is insufficient in law to accomplish the purpose of changing the grade of the street, or razing the bridge itself, because it does not conform to the statutory methods.

If we look at the language of the answer of the city we find it corroborates the view above outlined, that the only exclusive purpose in law of the passage

of the ordinance is to remove the existing structure, not to change the grade.

We quote as follows:

"That said viaduct has become badly out of repair; that the draw span was removed several years ago by order of the War Department of the United States government, and that said viaduct thereby ceased to become a bridge or means of passage from one side of the Cuyahoga valley to the other, but the east approach to said bridge became a shelf-like projection ending abruptly near the easterly bank of the Cuyahoga river, practically in front of the westerly line of plaintiff's premises; said portion of the old Superior street viaduct thereby became of no benefit to the public whatsoever; that it had outlived its usefulness and its purpose had been destroyed by virtue of the order of the War Department above referred to; that the longer continuance of said structure is liable to be a menace to the public and endanger the lives and limbs of those who may pass under or upon the same; and that, in order to prevent such danger actually becoming imminent, such viaduct should be removed at the earliest possible opportunity."

Thus it will be seen that the purpose to destroy the bridge is repeated in the answer, and conforms to the provision of the ordinance, with respect to a definite purpose. There is no indication, in the ordinance or in the answer, of any purpose or object on the part of the council to change the grade, and so far as the consummation of such a purpose is concerned the property owner not only has no knowledge as to the intention of council with respect thereto, but any action in contemplation by council as to the

change of grade is not divulged to the property owner, and he can only remain in mystery and speculation as to what the future has in store for him with respect to any legal movements which may be made by the municipality in relation to its property rights as to ingress and egress on the roadway formed by the bridge, which is contiguous to the property owner's place of business.

Again, as to the contention that the legal effect is to change the grade, this court having designated the bridge as the roadway across the Cuyahoga river, the grade in law must relate to the grade of the viaduct roadway. The claim, however, is made by the city, through its able counsel, that the approach is to be destroyed at some time or other. In other words, the elimination of the bridge road is the annihilation of the road itself, and such a situation is not, in our judgment, a change of grade.

The removal of a bridge which has been judicially denominated as a road cannot be equivalent to a change of grade, because with the grade destroyed it has not been changed but has been eliminated as a unit. Therefore we think the change of grade, as claimed under the ordinance and the answer, is a mere fiction, and has no substance in law; and the sovereign power of eminent domain cannot be founded upon a fiction, but must be founded on substantive law and be strictly construed.

Thus it appears that the provisions of the ordinance, and the actual facts, as disclosed by counsel for the city, are at war, for there is no way, under the statute, to change the grade of a street by the sole means of destroying a bridge, which as a public highway has become, under the exigencies of time

and progress, a missing link between the east and west sides of the city.

The right to tear down the bridge and to vacate the road under the statute exists, but the remedy which is sought in this case is not in accordance with the law. The remaining portion of the road, known as the viaduct, cannot be removed, according to the purpose outlined in the ordinance, unless there is an adherence to the statute in such cases made and provided, and the reason for this, we think, is found in the case of *Wilkin* v. *City of St. Paul,* 33 Minn., 181, 184, 185, 22 N. W., 249, 250, from which we read the following:

"The defendants purpose to construct along and over the southerly 36 feet in width of Third street, in the city of St. Paul, a bridge or structure 20 feet high above the established grade of the street, across the track of the railroad companies, defendants, with ascending approaches at the ends, and to close and keep closed to travel, except over the bridge, that part of the street between its two ends. Held, that this will operate to alter the actual traveled grade along that part of the street; and further, that this cannot lawfully be done without altering the established grade in the manner provided in the charter of the city; and further, that, until the established grade is so altered, an owner of a lot injured by the change in the actual traveled grade may have an injunction to restrain the acts of defendants pending an action for a permanent injunction.

"The charter provisions prescribing how an alteration in an established grade shall be made, operate to prohibit the making of an alteration in any other way. The prohibition is for the protection of

lot owners. An actual permanent alteration in the grade—an alteration, in fact, made merely by raising the surface of the street above or sinking it below the established grade—though done illegally, would probably operate as injuriously upon property as would an alteration made pursuant to the provisions of the charter. If the effect of the structure contemplated in this case will be to make the grade of the structure the actual practical grade of the street, on which all public travel must go, it will be small consolation to plaintiffs to know that such grade is not the legal one, but that underneath it, at depths varying from one to 20 feet, there is a legal theoretical grade which has not been legally altered, but which no one can use. If the structure will bring about an actual permanent alteration in the grade of the street as such grade was established, the provisions of the charter for alteration of street grades must be complied with before it can lawfully be done. Taking the grade of a street, as the term is used in the charter, to be the line or lines of elevation on which public travel by vehicles and on foot is to pass, there can be very little question that the contemplated work is intended to and will change the actual grade—the publicly traveled grade—by raising it for part of the length of the work 20 feet above the former grade, and reaching that height by an ascending grade at each end; the work for its entire length being above the established grade. Whether the approaches to the principal structure be made by filling in with earth, or by bridging supported by masonry or posts, it must be inevitable that the use as a street on the established grade on

that portion covered by the bridge and its approaches will be practically closed.''

It is clear that, when the Superior street viaduct was built, a street was constructed and its grade was established, and if the ordinance were, in legal effect, a change of grade, we think it could only apply to the grade of the viaduct street as it was established, and right here it is noticeable that, in the ordinance itself, there is no determination that the city will remove the east end of the viaduct, or that it has made any movement in relation thereto. In other words, if, by virtue of the ordinance, the appropriation proceeded without the restraining order, there would be no security, so far as any action on the part of council is concerned, as ascertainable from the ordinance, that the property owner would ever have ingress or egress restored to him by a change of grade.

It is our judgment that notice of councilmanic action upon this immediate aspect is due the property owner, under the law. Under the statute, a change of grade is provided for, but the provisions of the statute must be followed.

Section 3816, General Code, provides, in part:

''Council shall have on file in the office of the director of public service in cities * * * plans, specifications, estimates and profiles of the proposed improvement, showing the proposed grade of the street and improvement after completion, with reference to the property abutting thereon, which plans, specifications, estimates and profiles shall be open to the inspection of all persons interested.''

From Section 3815, General Code, we quote as follows:

"Such resolution shall determine the general nature of the improvement, what shall be the grade of the street, alley, or other public place to be improved, the grade or elevation of the curbs, and shall approve the plans, specifications, estimates and profiles for the proposed improvement."

Other provisions are contained in Sections 3818, 3824, 3825 and 3827 of the General Code.

In Section 3827, the court of insolvency is given jurisdiction of such proceedings, and it will be noticed that this section is not the same section from which the court gets jurisdiction in appropriation cases.

Inasmuch as learned counsel for the city admits that unless, in legal effect, the ordinance is for a change of grade, there is no foundation for his claim, we recur to those statutes, because his proposition is that the ordinance provides, in effect, for a change of grade, and yet the statutes above referred to are not employed to seek an end and purpose which are not revealed by the provisions of the ordinance. This position, assumed by counsel for the city, makes it unnecessary to go into the other questions in the case, because, in our judgment, the question we have discussed is determinative of the question whether the court committed prejudicial error in sustaining the demurrer to the answer below.

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

LEVINE and VICKERY, JJ., concur.