STATE ex Rel. CITY OF MILES CITY, Appellant, *v.* NORTHERN PACIFIC RAILWAY CO., Defendant and Respondent; YELLOWSTONE LUMBER CO. et al., Interveners and Respondents.

(No. 6,735.)

(Submitted November 14, 1930. Decided December 13, 1930.)

[295 Pac. 257.]

*Mr. D. L. O'Hern* and *Mr. P. F. Leonard* for Appellant, submitted an original and a reply brief and argued the cause orally.

532

*Messrs. Loud & Leavitt,* for Respondents-Interveners, submitted a brief; *Mr. Charles H. Loud* argued the cause orally.

538

*Messrs. Gunn, Rasch & Hall,* for Respondent Northern Pacific Railway Company, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

The city of Miles City commenced this action in mandamus to compel the Northern Pacific Railway Company to construct a subway under its tracks on Main Street in Miles City, in obedience to the requirement of a city ordinance. Upon the filing of the complaint an alternative writ was issued. Over objection of the city, the Yellowstone Lumber Company and the Miles City Grain Company were permitted to file complaints in intervention, showing that they hold leases on lands situated on the railroad right of way adjacent to Main Street, on which they have constructed buildings and are engaged in extensive business operations; that, if the subway is constructed, it will lower the grade of Main Street in front of their property from 7.2 to 8.4 feet and to such an extent as to destroy the means of ingress and egress, and thus render the business sites valueless and destroy their business and property; that the city has not agreed upon, or fixed or determined by appraisement, the amount of damages that interveners will sustain because of the change of grade, and they ask that the alternative writ be quashed and the city

enjoined from compelling the railway to change the grade until the damage to interveners has been determined and paid. After issue was joined by appropriate pleadings the cause was tried to the court without a jury, the Honorable John Hurly, Judge presiding. The railway company and interveners objected to the introduction of any evidence on behalf of relator, because the application for the writ did not show that relator had complied with the law requiring the assessment and payment of damages to property owners which will result from a change in the grade. Evidence was submitted by all the parties, from which the court made findings of fact in substance as follows:

That the Northern Pacific Railway Company operates a railroad between Duluth, Minnesota, and Tacoma, Washington, which passes through Miles City, Montana, in a general easterly and westerly direction; that Miles City was first settled in 1878 and the railroad constructed in 1881; that the track was located on the 400-foot right of way donated to the railway company by Congress by Act of July 2, 1864; that Main Street in Miles City is now situated identically where a highway existed before construction of the railroad and has been used and traveled by the public and recognized by the public authorities; that the city was incorporated in 1887 and since that time the railway company, under direction of the city, has maintained and repaired the crossing over its tracks and right of way; that the cost of constructing the subway would be about $100,000; that the city has a population in excess of 7,500, about one-half being south of and the remainder north of the track. The findings show that the topography of the city, the situation of its churches, schools and hospital, and the location of its business district, are such as to constitute Main Street the principal street of the city, traveled daily, at the crossing in question, by hundreds of school children, pedestrians and vehicles; that long freight trains frequently block Main Street crossing and other crossings for a period of time in excess of the time provided by city ordinance, and that sometimes, when the crossing is

blocked, pedestrians and school children crawl under or over the freight-cars; that the blocking has interfered with the operation of ambulances and fire trucks; that the railway company has five separate tracks across Main Street, known as the main track, two passing tracks and a separate track serving each of the interveners; that it has installed an electric wigwag warning signal at the crossing which operates only when a train is approaching on the main track; that the signals operate occasionally when cars are placed on the main track and when no train is approaching; that the buildings belonging to interveners and situated on the railroad right of way, held under lease by interveners, are close to Main Street and obstruct the view of the tracks and contribute to and enhance the danger of the crossing; that the construction of the subway will materially change the grade of Main Street at the place of construction and that no proceedings have been had in conformity with the statutes of this state to change the grade, and that if the change is made in the grade, interveners will suffer substantial damages.

From these findings of fact the court concluded as a matter of law that because of the failure of the city to comply with the statutes in attempting to change the grade of Main Street at the point where it abuts upon the property of interveners, the application for the writ should be denied. Judgment was accordingly entered quashing the alternative writ and dismissing the proceedings. The appeal is from the judgment.

It is insisted on behalf of the city that the court erred in permitting the complaints in intervention to be filed, in awarding judgment for defendant and interveners, and in not entering judgment for relator.

The law is well settled that a city may, in the exercise of the police power conferred upon it by the legislature, enforce uncompensated obedience to reasonable regulations requiring the construction of crossings by railway companies, designed to promote the safety of the public and the general welfare (*New Orleans Public Service* v. *City of New Orleans,* 281 U. S. 682, 74 L. Ed. 1115, 50 Sup. Ct. Rep. 449; *Lehigh*

*Valley R. Co.* v. *Board,* 278 U. S. 24, 62 A. L. R. 805, 73 L. Ed. 161, 49 Sup. Ct. Rep. 69), and that contracts made by the railway company are made subject to the exercise of that right. (*Erie R. Co.* v. *Board of Public Utility Commrs.,* 254 U. S. 394, 65 L. Ed. 322, 41 Sup. Ct. Rep. 169.)

But it is also the rule that the extent of the police powers of a city and the manner in which they may be exercised depend upon applicable legislative Acts. (McQuillin on Municipal Corporations, 2d ed., sec. 948.) "The source of the police power of a municipality is the state. The extent of it must be ascertained from the law creating the municipality, and from the laws of the state bearing upon the same subject." (*Helena Light & Ry. Co.* v. *City of Helena,* 47 Mont. 18, 130 Pac. 446, 447.) Of this same question the supreme court of Iowa, in *Trustees of Protestant Episcopal Church* v. *City of Anamosa,* 76 Iowa, 538, 2 L. R. A. 606, 41 N. W. 313, 314, said: "The city must exercise its power in the manner prescribed by its charter. If authority be conferred upon it to establish grades, and cause streets to be graded by ordinances, these things cannot be done in any other way. The city must pursue the law granting it authority." In consequence, we must look to the statutes to determine whether the city has the right to enact the ordinance in question here, and whether its authority was properly exercised.

Subdivision 12 of section 5039, Revised Codes 1921, as that section was finally amended by Chapter 20 of the Laws of 1927, gives the city the power "to require the construction of crossings on the line of any railroad track or route within the city * * * where the said track intersects or crosses. any street, * * * and to fix and determine the size and kind of such crossing and the grades thereof; and, in case the owner of such railroad fails to comply with such requirements, the council may cause the same to be done, and it may assess the expense thereof against such owner, and the same constitutes a lien on any property belonging to such owner within such city or town, and may be collected as other taxes."

But under subdivision 68 of section 5039, which must be read in connection with subdivision 12, it is expressly provided that when once the grade of a street has been established "it must not be changed * * * until the damage to property owners caused by the change of grade, has been assessed and determined by three disinterested appraisers who must * * * make an appraisement, taking into consideration the benefits, if any, to the property, * * * and the amount of damages so assessed must be tendered to the owner or his agent before any change of grade is made."

Also, section 5300 provides: "When the grade of any street * * * is established * * * and a building shall thereafter be constructed upon a lot abutting on said street, no change must be made in the grade of such street * * * which requires the raising or lowering of any building so constructed until the damages which may accrue by reason of such raising or lowering are ascertained and paid, as is hereinafter provided."

Section 5301 provides for the method of appraising the damages, and succeeding sections give the right of appeal from the appraisement.

These statutory provisions, whether necessary or not to save subdivision 12 of section 5039 from transgressing the constitutional inhibition contained in section 14, Article III of the Montana Constitution, constitute a part of the law under which the city may exercise its police power effecting a change in the grade of a street. They, in effect, contain limitations upon the authority of the city to exercise the power conferred by subdivision 12, and must be observed whenever there is a change in the grade of an established street.

The record here shows that the street as it exists now has been used as the grade line for about fifty years and that it has been paved and improved, and hence the grade has become established in contemplation of law. (*Thorberg* v. *City of Hoquiam*, 77 Wash. 679, 138 Pac. 304; *Jones* v. *City of Clarksburg*, 84 W. Va. 257, 99 S. E. 484; *City of Youngstown* v. *Moore*, 30 Ohio St. 133; 13 R. C. L. 104.) Obedience to the

requirements of the ordinance will result in a material change in the established grade. (See in this connection *Wilkin* v. *City of St. Paul*, 33 Minn. 181, 22 N. W. 249, and *City of Cleveland* v. *General Storage Co.*, 28 Ohio App. 480, 162 N. E. 819.) This, under our statutes, may not be done without first assessing and paying compensation for damages caused thereby to property owners.

But the city, conceding that if interveners owned property not on the railroad right of way, they would possibly be entitled to compensation for damages sustained by a change in the grade, contends that since their rights were acquired by lease from the railway company, a different rule obtains. We see no merit in this contention.

The right of way of the railway company was granted to it by Act of Congress of July 2, 1864 (13 U. S. Stats. at Large, 365.) The railway company owns the right of way in fee. (*Missouri, Kan. & Tex. Ry. Co.* v. *State of Oklahoma*, 271 U. S. 303, 70 L. Ed. 957, 46 Sup. Ct. Rep. 517.) The right of way was granted for railroad purposes and therefore the city contends that the railway company has no right to deed or lease any portion of it to interveners for other purposes. So far as this case is concerned we need not determine whether the railway company has the right to make the leases to interveners. Interveners are using their property for legitimate purposes. The use made of their property involves no question of good morals; their business is not opposed to public policy. If the railway company has not the right under the grant from the government to lease the lands, as it has done, the government alone can complain. The railway company has made the leases and the lessees have constructed buildings which, according to their evidence, will be rendered valueless if the ordinance is enforced. They have property rights which will be damaged and which under our statutes entitle them to compensation before changing the grade of the street.

Nor is there any merit in the claim of the city that this result permits the railway company to make a contract depriving the city of its police power. Whatever the law may

be in other jurisdictions, the police power of a city in this state, in so far as its exercise causes a change in the grade of a street, is limited by the statutory provisions requiring compensation to be first made for damages to property owners. The exercise of that right by the city is not affected by the lease. In this state the law applicable to the change of grade of a street is substantially the same as in condemnation proceedings and requires compensation to be first paid for damages to property owners. There is nothing in the lease inconsistent with the proper exercise of the police power of the city. And neither is unlawful interference with the proper exercise of the police power accomplished by requiring the power to be exercised as the law directs.

It is also asserted by the city that to require compensation to be made to interveners for damages sustained by them is to place them, as lessees, in a better position than the railway company, the lessor. This result does not follow. The railway company may be required to construct a subway at its own expense, yet if its property must be taken to establish the street, it is entitled to receive compensation, which does not include, however, the cost of constructing the subway. (*Missouri etc. Ry. Co.* v. *State of Oklahoma*, supra.) Likewise, if it owned the buildings in question here which will be damaged because of a change of grade in the established street by the construction of a subway, it would have a right under our statutes to compensation for the damages, other than the cost of construction, the same as any other property owner, and the lessees have the same right and no more. A tenant's term is property (*City of Detroit* v. *Little Co.*, 141 Mich. 637, 104 N. W. 1108; *Pause* v. *City of Atlanta*, 98 Ga. 92, 58 Am. St. Rep. 290, 26 S. E. 489), and a statute requiring compensation to owners of property damaged by a change in the grade of a street authorizes recovery by a tenant for years. (*Chiesa & Co.* v. *City of Des Moines*, 158 Iowa, 343, 48 L. R. A. (n. s.) 899, 138 N. W. 922; *Beste, Exr.,* v. *Cedar County*, 87 Neb. 689, 128 N. W. 29; *Sheehan* v. *City of Fall River*, 187 Mass. 356, 73 N. E. 544; *Corrigan* v. *City*

*of Chicago,* 144 Ill. 537, 21 L. R. A. 212, 33 N. E. 746; *Parker* v. *Minneapolis & St. L. R. Co.,* 79 Minn. 372, 82 N. W. 673; *Woodstock Hardwood etc. Co.* v. *Charleston Light & Water Co.,* 84 S. C. 306, 66 S. E. 194; 10 R. C. L. 135; 13 R. C. L. 107.)

The fact that the leases are terminable at the option of █ the railway company upon thirty days' written notice does not destroy the right of the tenant to compensation, but is a circumstance to be considered in determining the amount of the proper award to be made. (*City of Detroit* v. *Detroit United Ry. Co.,* 156 Mich. 106, 120 N. W. 600.)

Counsel for the city further contend that it was error to █ permit the filing of the complaints in intervention. In other words, they contend that the interveners have no right to be heard in this proceeding.

By section 9088, Revised Codes 1921, any person who has an interest in the matter in litigation may intervene in an action or proceeding. "The statute is broad enough to permit intervention in any case, provided only the person seeking to intervene can show either an interest in the subject matter of the action, or an interest in the success of either of the parties, or an interest in the subject matter against both." (*Foster* v. *Coyle,* 59 Mont. 444, 197 Pac. 747, 749.)

Sections 9847 et seq., Revised Codes 1921, provide for proceedings in mandamus. Section 9866, Id., provides: "Except as otherwise provided in sections 9836 to 9867, the provisions of sections 9008 to 9832 of this Code are applicable to and constitute the rules of practice in the proceedings mentioned in sections 9836 to 9867." Thus, by section 9866 the provisions of section 9088 are made applicable to mandamus proceedings except or unless otherwise provided. There is no statutory provision which indicates that the legislature intended that section 9088 should not have application to mandamus proceedings.

The supreme court of California, in speaking of their statute which is the same as section 9088 of our statute, in *Robinson* v. *Crescent City M. & T. Co.,* 93 Cal. 316, 28 Pac. 950, 951, said: "This section, it will be observed, does not limit

the right to intervene to any particular kind or class of actions or proceedings, but is general."

The word "proceeding" means special proceedings provided for by statute (*State ex rel. Carleton* v. *District Court*, 33 Mont. 138, 8 Ann. Cas. 752, 82 Pac. 789), and includes every application to a court for a judicial remedy not comprehended in the term "action." (Sec. 8998, Rev. Codes 1921.) An application for a writ of mandamus is a special proceeding of a civil nature. (*State ex rel. Bennetts* v. *Duncan*, 47 Mont. 447, 133 Pac. 109.) Such proceedings are not, however, civil actions, and interveners could not in this proceeding recover the damages which they will sustain by the change of grade. (*Bailey* v. *Edwards*, 47 Mont. 363, 133 Pac. 1095.) But they are not seeking the recovery of damages but merely to prevent the enforcement of the ordinance because the damages have not been first paid to them as required by statute.

Issuance of a writ of mandamus has been held properly resisted by proceedings in intervention in the following cases: *First National Bank of Neligh* v. *Lancaster*, 54 Neb. 467, 74 N. W. 858; *State ex rel. Bullion & Exchange Bank* v. *Mack*, 26 Nev. 430, 69 Pac. 862; *Conlee* v. *Clay City*, 31 Ky. Law Rep. 533, 102 S. W. 862; *Kruegel* v. *Murphy & Bolanz*, 59 Tex. Civ. App. 482, 126 S. W. 680; *Johnston* v. *Conway*, 151 Ark. 398, 237 S. W. 80; *McBrayne* v. *City Council of Lowell*, 241 Mass. 380, 135 N. E. 311.

Since the writ never issues as a matter of right but rests in the discretion of the court, and since in exercising that discretion the court may take into consideration not alone the defendant's rights but the interests of third persons as well (*State ex rel. Larsen* v. *District Court*, 78 Mont. 435, 254 Pac. 414), we think the court properly permitted interveners to file the complaints in intervention. By so doing they may not, however, broaden the scope or functions of the proceeding in mandamus, but may oppose or resist the granting of the writ, as here. (*Wright* v. *Jordan*, 192 Cal. 704, 221 Pac. 915.)

Since the evidence shows and the court found that interveners will sustain substantial damages if the ordinance is enforced, and since it is conceded that no proceedings have been taken to appraise and pay the damages resulting to interveners by a change in the grade of Main Street, the court properly sustained the motion to quash the alternative writ and properly entered judgment dismissing the proceedings. Other questions presented by the railway company need not be considered.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.

Rehearing denied February 4, 1931.

