Deyo, J.
(dissenting). Prior to July 1, 1945, respondent, hereinafter referred to as Federal, was engaged in the manufacture of radio and telephone parts in the State of New York. As of that date it decentralized its activities, transferring to a wholly owned subsidiary,- the Federal Telecommunication Laboratories, Inc., hereinafter referred to as Laboratories, that portion of its plant, equipment and other assets theretofore conducted by its laboratory division, valued at some two and one-half million dollars. It also transferred those employees engaged in that type of work, aggregating over one thousand persons. Federal retained only nominal assets, consisting mostly of office equipment, valued at some ten thousand dollars and some twenty-five employees with which it continued to operate its patent and service divisions. Pursuant to subdivision 4 of section 577 of the Unemployment Insurance Law (Labor Law, art. 18), Federal received a contribution rate credit in the amount of $23,156.23 for the year 1945, which could be applied only against contributions payable during the year commencing July 1, 1945. Due to Federal’s limited activities and reduced payrolls it would have been unable to take advantage of this credit during the permitted year. It therefore made application to transfer this contribution rate credit to Laboratories, which it was ultimately permitted to do by the Appeal Board, from whose decision-this appeal is taken.
The sole issue presented is whether Federal was entitled to transfer its contribution rate credit to Laboratories. This question which is one of first impression in the courts of this State, involves an interpretation of the Unemployment Insurance Law and the rules promulgated thereunder by the Industrial Commissioner.
In 1945, due to the large accumulations in the Unemployment Insurance Fund, it became apparent that credits based upon stability of employment and payrolls, could be allowed back to employers without impairing the solvency of the fund. Section 577 of the Unemployment Insurance Law was therefore enacted (as added by L. 1945, ch. 646), establishing “ Contribution rate credits ” to be granted to “ Qualified employers ” who were defined as those who had reported and paid contributions as required during the thirteen preceding calendar quarters. This section also provided that the period of “ liability ” of *195 successor employers should be jointly considered where one employer had acquired all of the assets of another, and such other had discontinued operations.
This subdivision set up the standard of eligibility for those who sought contribution rate credits in the first instance, a standard which Federal concededly met. It made no reference to a transfer of such credits, once they had been duly issued. The only reference in the law as then constituted, to these transfers, was contained in subdivision 4 of the section which read in part as follows: “No credit shall be transferred by any employer to his successor or anyone else except in accordance with such rules as the commissioner may prescribe. ’ ’ Pursuant to this provision and to the general rule making authority granted him under section 530 of the Unemployment Insurance Law, the commissioner promulgated rule 3, setting forth certain conditions to be met in order to transfer the contribution rate credits. This rule provided in part (subd. b):
“ A credit to which an employer is entitled, or such unused portion thereof as is valid, may be acquired by another employer by means of transfer subject, however, to corrections and modifications as are provided in the law if
“ (1) the acquiring employer has acquired all or substantially all of the assets of the transferring employer, and
“ (2) the transferring employer discontinues operations not later than the date of such acquisition and has submitted all reports on the wages paid by him to the date of acquisition, * * (N. Y. Official Compilation of Codes, Rules & Regulations [1948 Supp.], p. 988; Div. of Placement & Unemployment Ins.)
It is of course elementary that the power granted to any administrative body is not the power to legislate but to administer the law as enacted by the Legislature. (Matter of Seignious v. Rice, 273 N. Y. 44.) The Legislature in the enactment of the Unemployment Insurance Law carefully defined the substantive rights and duties of both employees and employers, granting nothing to the commissioner except the power to issue regulations dealing with administration and procedure. Under section 577 of the Unemployment Insurance Law, the standards of eligibility for employers seeking a credit in the first instance were clearly defined. However, no such standards were prescribed with respect to a transfer of such contribution rate credits once they were issued, and the conclusion seems inescapable that no limitation on the right to transfer was intended. Certainly it may not be successfully argued that the Legislature *196 intended the right of transfer to he limited to a successor in interest when the words “ successor or anyone else ” were specifically, and we assume purposefully employed in the statute itself. It is highly significant to note that in 1947, long after this controversy had arisen, the Legislature amended subdivision 4 of section 577 of the Unemployment Insurance Law so as to incorporate into it the very restrictions previously placed upon the transfer of credits by rule 3. Had this rule possessed the force and effect for which the commissioner presently argues, no such legislation would have been necessary and the amendment would have been a nugatory act. Such legislative intent' or lack thereof will not be assumed. (Mabie v. Fuller, 255 N. Y. 194, 201; People ex rel. Sheldon v. Board of Appeals, 234 N. Y. 484, 495.)
I am of the opinion that the attempted limitation on the right to transfer contribution rate credits as set forth in rule 3 was contrary to the intent and meaning of the statute, and that the promulgation thereof by the commissioner was in excess of his statutory powers. Therefore, the Appeal Board had full authority to declare it null and void as having no reasonable basis in law and to overrule the denial of the application to transfer the contribution rate credits.
The decision of the Unemployment Insurance Appeal Board should be affirmed, with costs to the respondent.
Foster, P. J., Brewster, Santry and Bergan, JJ., concur in Per Curiam opinion; Deyo, J., dissents, in an opinion.
Decision of the Unemployment Insurance Appeal Board reversed, on the law, and the initial determination of the Industrial Commissioner affirmed, with costs to the Industrial Commissioner.