In the Matter of EASTERN MILK PRODUCERS COOPERATIVE ASSOCIATION, INC., Petitioner, v STATE OF NEW YORK DEPARTMENT OF AGRICULTURE AND MARKETS et al., Respondents.

Third Department, July 22, 1982

**APPEARANCES OF COUNSEL**

*Williams, Micale & Wells* (*Frederick J. Micale* of counsel), for petitioner.

*Thomas G. Conway* (*Michael McCormick* of counsel), for respondents.

**OPINION OF THE COURT**

YESAWICH, JR., J.

Petitioner is a co-operative corporation which markets milk produced by its member dairy farmers. Among petitioner's customers was R & R Schofield (Schofield), a

licensed milk dealer. On September 19, 1979, Schofield failed to pay for milk it had received during August, 1979, a departure from its normal practice of paying on the 19th day of the month following the month in which milk was delivered. Petitioner nevertheless continued delivering milk until September 25, 1979. Ultimately, Schofield defaulted on both the August and September payments, and petitioner filed a claim for payment against the milk producers' security fund (Agriculture and Markets Law, § 258-b).

In 1975, the Legislature found that "the marketing of milk requires dairy farmers customarily to extend from thirty to fifty-five days credit to dealers for milk supplied, thereby subjecting milk producers to large credit risks" (L 1975, ch 526, § 1). To furnish producers protection and security against loss of payment occasioned by defaulting purchasers, the Legislature enacted section 258-b of the Agriculture and Markets Law establishing the milk producers' security fund. All milk dealers, except co-operatives and those who have filed a bond or other security, are obliged to pay specified amounts to the respondent commissioner; these dealer contributions make up the fund. In the event a milk purchaser defaults, the milk producer may file a claim against the fund to recoup the amounts owing. The commissioner's duties include regulation of the filing of claims and certification of the amount to be paid from the fund to a claimant.

In the matter at hand, the commissioner, on February 6, 1981, declined to certify that petitioner was due any moneys for milk delivered to Schofield after September 20, 1979. This refusal was based upon 1 NYCRR 44.3, a regulation promulgated by the commissioner implementing the prompt payment for milk language in subdivision 2 of section 258-b, which declared that the final payment date for the delivery of milk is "the 20th day of the month following the month in which the milk was purchased or received" (1 NYCRR 44.3). Milk sales thereafter for other than cash on delivery are unlawful if the buyer has exceeded this credit period (Agriculture and Markets Law, § 258-b, subd 15). It is the commissioner's position that since petitioner's sales and deliveries, made after Scho-

field's September default, were in violation of the prompt payment provisions of section 258-b, petitioner should be prohibited from recovering for these sales.

Several reasons militate against adopting this view. First, when these events transpired, section 258-b (subd 5, par [b]) read "[n]o claims shall be allowed for deliveries of milk by a producer in excess of the amount owed for the *first two months* deliveries. of milk" (emphasis added). Thus, the statute allowed petitioner's claim for milk delivered on September 21 through September 25, as these days fell within the two-month limit. Second, the Legislature amended section 258-b (subd 5, par [b]), effective February 1, 1982, and as amended this paragraph provides, in part: "No claims against [the fund] shall be allowed for * * * (2) sales of milk by a producer to a milk dealer subsequent to its failure to pay within the time periods prescribed in subdivision two, where the commissioner finds, after due notice and opportunity of hearing, that such extension of credit, whether direct or indirect, to such milk dealer by the producer did not constitute a reasonable exercise of business judgment." By this amendment, the Legislature conferred upon the commissioner the very authority he now claims to have possessed in 1979. If, prior to the amendment, the commissioner could indeed prohibit, under the statute's prompt payment provisions, that portion of petitioner's claim which arose from extending credit beyond September 20, the Legislature has occupied itself needlessly for the amendment was wholly unnecessary; but when it amends a statute, the Legislature is deemed to have intended to materially change the law (*People ex rel. Sheldon v Board of Appeals of City of N. Y.*, 234 NY 484; McKinney's Cons Laws of NY, Book 1, Statutes, § 193).

Still another reason for not acceding to the commissioner's disposition lies in subdivision 15 of section 258-b, which articulates the section's prohibitions and penalties. It carries its own penalty of $100 for every day petitioners sold milk to Schofield after prompt payment was not forthcoming. The existence of this separate penalty bespeaks a legislative intention to separate subdivision 15's cash payment requirements from the operation of the milk producers' security fund.

Accordingly, the commissioner's determination should be modified, by annulling so much thereof as refused to certify that portion of petitioner's claim arising from sales during September 21 through September 25, 1979, and, as so modified, confirmed; matter remitted to the Commissioner of Agriculture and Markets for further proceedings not inconsistent herewith.

MAHONEY, P. J., MAIN, CASEY and MIKOLL, JJ., concur.

Determination modified, by annulling so much thereof as refused to certify that portion of petitioner's claim arising from sales during September 21 through September 25, 1979, and, as so modified, confirmed, with costs to petitioner; matter remitted to the Commissioner of Agriculture and Markets for further proceedings not inconsistent herewith.